Durham *vs.* Holeman.

## DURHAM *vs.* HOLEMAN.

1. Proof of the existence and execution of an original deed must be made before a copy thereof can be used as evidence,

2. Where illegal evidence has been admitted, it is error to make such illegal evidence the basis of a direction for the finding of the jury.

3. When a deed is put in evidence purporting to have the name of one subscribed thereto as Justice of the Peace, as a subscribing witness, and a certificate from the Executive Department shows that no such person was Justice of the Peace in the county when the deed purports to have been executed, at that time, such proof, in the absence of rebutting evidence, is conclusive evidence of the forgery of the paper, and the fact cannot be weakened by a supposition.

4. The cutting of timber will not constitute an adverse possession of the land, nor will proof of particular acts at different times create a statutory title.

5. No matter what the acts of a defendant may have been, or what claim he may have asserted to the land in controversy, unless he has been in the actual possession of the land, by himself or his tenant, openly, notoriously, visibly and continuously for seven years previous to the commencement of the suit, under color of title and claim of right, the Statute of Limitations will not protect him against the true title.

6. When there is a conflict of the evidence, the jury must so reconcile the whole as to make all speak the truth, if possible.

7. When the plaintiff's title or cause of action is plainly made out, and the defendant relies on a special plea in bar to defeat the recovery, such as the Statute of Limitations, the defendant must establish the facts to sustain the plea affirmatively beyond a reasonable doubt, else the verdict must be against the plea.

Complaint in Ejectment, in Sumter Superior Court. Tried before Judge Allen, at April Term, 1860.

This suit was brought by Durham against Holeman to recover lot No. 221, in the sixteenth district of Sumter county. On the trial, the plaintiff introduced the grant from the State to himself, dated June 2d, 1843, and having shown the defendant to have been in possession at the commencement of the suit, closed his case.

The defendant was then sworn before the Court, and stated that there was a copy deed on record, (the original he had never seen or had,) purporting to have been made by plaintiff to one Josiah Bradley, and purporting to have been attested by one James G. Bird and one John R. Wells, J. P., and to have been executed in Wilkinson county, on the 1st day of November, 1829. Defendant stated further, that he had searched for said deed in the Clerk's office and by asking May, (from whom defendant had a deed for half the lot in dispute,) and that May said the original deed had been lost or mislaid ; also, had made diligent inquiries for Bradley, but could not find his whereabouts.

Defendant's counsel then proposed to read in evidence said. copy deed from the record.

Plaintiff's counsel objected, on the ground that neither the existence nor the loss of the original had been proven.

The objection was overruled, and the copy deed read in evidence.

Defendant then read in evidence a Justice's Court *fi. fa.* in favor of one Sandford against James H. May, with the following entries thereon :

"Levied the within *fi. fa.* on 20 head of sheep, more or less. July 10th, 1845.

"JAMES T. HOLEMAN, L. C."

"Property sold for $200 00, and bought by Francis Mills. The money claimed by an older execution. July 26th, 1845.
"JAMES T. HOLEMAN, L. C."

"Levied the within *fi. fa.* on 27 head of sheep. August 7th, 1845. JAMES T. HOLEMAN, L. C."

"No property to be found whereon to levy this *fi. fa.* October 17th, 1845. WM. FLOWERS, L. C."

Durham *vs.* Holeman.

"Levied the within *fi. fa.* on two lots of land, Nos. 221 and 222, in the sixteenth district of Sumter county, as the property of James H. May. This 17th October, 1845.

"Wm. Flowers, L. C."

"The levy on the within *fi. fa.* on two lots of land, Nos. 221 and 222, in the sixteenth district of Sumter county, this day sold to James T. Holeman. Lot No. 221 sold for $20 25, and lot No. 222 sold for $30 6¼, and money held up by older *fi. fa.* December 2d, 1845.

"G. M. Wheeler, Dep. Sheriff."

The sheriff's deed, made in accordance with the above sale, was then introduced, dated October 15th, 1850. Also, a deed from James H. Hay to defendant for the north half of the lot in dispute, dated July 13th, 1842.

Defendant then introduced as witnesses Isaiah Ansley, John Willingham, Joseph M. Livingston, Wingfield M. Livingston, John D. McCay, Green Robinson and George C. Robinson, who testified, in substance, that said John Willingham, as tenant of defendant, went on the lot in dispute in the fall of 1848, and lived thereon with his mother until the latter part of that year, or the first of 1849, when defendant himself went on the lot, and has lived there ever since, there being no interval between Willingham's and defendant's possession; that there was a shelter, or cabin, on the lot in 1848, and a small horse or cow lot, some land deadened, (the witnesses variously estimate the quantity at from 15 to 50 acres), and a good fence around the horse lot, which embraced about one-quarter or half an acre; said improvements made by defendant or his said tenant. One or two of the witnesses state that there was also a well dug on the place in 1848, and several thousand rails split, and that defendant made a crop there in 1849.

Defendant here rested his case.

Plaintiff, in rebuttal, introduced an exemplification from Executive Department at Milledgeville giving the names of the Justices of the Peace elected and commissioned for the county of Wilkinson in the year 1829, and among which the name of John R. Wells does not appear. Plaintiff then introduced as witnesses A. W. Wheeler, Green M. Wheeler,

B. M. Wheeler, A. M. Little, Moses Driver, Patrick Brady, Mrs. Driver and P. H. Wooten, who testified, in substance, that defendant did not go into possession of the lot in dispute until the latter part of 1849 or the first of 1850, and all of them, except one or two, (who do not speak of Willingham), state that Willingham did not go on the lot until the fall of 1849; that no one was on the place in 1848, although there was a shelter there and some deadening of land, and a small horse or cow lot not used; that the land was not cultivated in 1848, nor until Willingham went there, except a small corner next to Mrs. Driver's place cultivated by A. W. Wheeler in 1849. Several of the witnesses state that the horse or cow lot was there in 1847, and some of the land was deadened also that time, but no one was living on the place in 1847 or 1848 or cultivating it. Plaintiff also proved by Mary Till that Green Robinson lived ten months of the year 1849 in Houston county.

It appears from the record, that this suit was brought on the 14th day of February, 1856.

The evidence having closed, the Court charged the jury, and they returned a verdict for the defendant.

Plaintiff moved for a new trial on the following grounds, to-wit:

1st. Because the verdict is against law and the weight of the evidence.

2d. Because the Court erred in admitting in evidence the copy deed purporting to have been made from plaintiff to Bradley.

3d. Because the Court, after giving in charge to the jury several written requests of plaintiff's counsel, (which are set out in the record, but omitted here), gave in charge the following requests of defendant's counsel, to which plaintiff excepts, to-wit:

1st. That if they believe, from the evidence, that Durham, the plaintiff and drawer of the land, sold and made a deed to Bradley, then the plaintiff cannot recover in this suit.

2d. That the certificate from the Executive department of the State, certifying to the Justices of the Peace who were commissioned and qualified in the year 1829, in which the name of the Justice to the deed does not appear, is not *absolutely conclusive evidence* that no such person was Justice of the Peace in the State of Georgia, nor is it absolutely con-

Durham *vs.* Holeman.

clusive evidence that said deed is a forgery; but it is only evidence tending to prove that fact, and may or may not prove it, as you may believe from all the evidence in the case on that point.

3d. That if the jury believe that the defendant commenced improving the lot of land sued for in 1847 or 1848, and continuously occupied the same for seven years, by cutting of timber, building houses, deadening land and enclosing portions thereof, and by cultivating the same, then the verdict must be for the defendant—the law being, that seven years peaceable and uninterrupted possession gives a statutory title to real estate in Georgia.

4th. That if the jury believe, from the evidence, that defendant, by himself or by Willingham, his tenant, held one-half acre of fenced land and deadened 30 or 40 acres of the land, built a house thereon, dug a well in 1848, and continued, without interruption, to thus occupy, and claimed said land continuously, uninterruptedly, adversely for seven years, then his title is good to the whole lot; if you believe the whole lot was sold to defendant at sheriff's sale in 1845, the said entry and sale being, in law, a good color of title.

5th. That if the jury believe the acts and use of the lot in question by the defendant were of such a character as to leave no doubt in the mind of Durham, if he had passed that way, that it was the purpose of Holeman to keep him out of his land, and that he was an adverse claimant, then such use and acts, in law, constitute adverse possession, and if continued seven years, will ripen into a perfect title.

6th. That it is the duty of the jury to reconcile all the testimony and make each witness speak the truth, if possible; if that is not possible, all the witnesses being credible, then those who had the best opportunity of knowing are to be most relied on.

7th. That where there is an irreconcilable conflict in the evidence resulting in reasonable doubt upon the mind, then in this, like a criminal case, the defendant is entitled to the reasonable doubt, and the law will leave the parties where it found them.

The Court refused to grant a new trial, and plaintiff excepted.

N. A. SMITH, LANIER & ANDERSON, for plaintiff in error.

HAWKINS & McCAY, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

1. Before secondary evidence of the contents of a lost deed can be gone into, the existence and execution of such deed must be established by proof. This question was thoroughly investigated and fully settled by this Court in *Young vs. Bigelow*, decided at the March Term, 1860, of this Court at Atlanta. 1 *Phil. Ev.*, 452; 1 *Gr. Ev.*, sec. 558, *and note.* It was error, therefore, in the Court to permit a copy, from the record, of the deed purporting to be from the plaintiff to one Josiah Bradley, to be read to the jury as evidence, without proof of the existence and execution of the original.

2. The only evidence before the Court, that the plaintiff had sold and made a deed for the land to Bradley, was that of the copy deed before referred to, and as that deed was improperly admitted, and constituted no evidence of the fact—and it was error in the Court to charge the jury, that if they believed, from the evidence, that the plaintiff had sold and made a deed to Bradley, the plaintiff could not recover.

3. The certificate from the Executive Department, showing that there was no such Justice of the Peace in the county of Wilkinson during the year 1829, as John R. Wells, who appears to be a witness to the deed on record, purporting to be from the plaintiff to Josiah Bradley, dated the first day of November, 1829, and whose name appears to such copy as a Justice of the Peace, in the absence of any other proof on the subject, was conclusive evidence that such deed was a forgery, and the Court erred in charging otherwise. When this proof was made, the onus was on the defendant to show, although there was no such Justice of the Peace in Wilkinson county at that time as John R. Wells, yet there was a Justice of the Peace in the State of that name, who attested that deed in his official capacity, that would have rebutted and overcome the effect of the certificate; but it cannot be broken down, overcome, or weakened by a mere supposition, unsupported by fact.

Upon the subject of adverse possession, the Court charged the jury, at the request of counsel for defendant:

" That if the jury believe that the defendant commenced

Durham *vs.* Holeman.

improving the lot of land sued for, in 1847 or 1848, and continuously occupied the same for seven years by cutting of timber, building houses, deadening land, and including portions thereof, and by cultivating the same, then the verdict must be for the defendant—the law being, that seven years peaccable and uninterrupted possession gives a statutory title to real estate in Georgia.

" That if defendant, by himself or by Willingham, his tenant, held one-half acre of fenced land, and deadened 30 or 40 acres of the land, built a house thereon, dug a well in 1848, and continued without interruption to *thus* occupy and claim said land continuously, uninterruptedly and adversely for 7 years, then his title is good to the whole lot; if you believe the whole lot was sold to defendant at sheriff's sale in 1845, the said entry and sale being, in law, a good color of title."

4. The cutting of timber is not such adverse possession as will even create a statutory title to land; nor will any of the specific acts or things enumerated by the Court, such as deadening the timber, clearing the land, building houses, making enclosures, digging a well, claiming the land adversely. The thing absolutely necessary to exist, to protect the defendant under the plea of the Statute of Limitations from the plaintiff's title, was wholly lost sight of by the Court in this charge, and that is, the defendant must not only commence to improve, etc., but he must, either by himself or his tenant, *go into the actual possession of the land*, under claim of right, and continue in the actual and unbroken possession of the land for seven years continuously preceding the commencement by plaintiff of his suit for his recovery. It will not do for the defendant to dig a well, make a horse lot, split rails and deaden land, and then leave the land in that condition and return again after the lapse of a year or so, and then date his possession from the time he made the first improvement: in that case, the statute begins to run only from the time he returns and goes into the actual possession—not from the time he commenced to improve. Several of the witnesses testify that Holeman did make improvements on the lot in 1847, or earlier, perhaps, as enumerated by the Court; but they also positively state that neither Holeman or any one else occupied the land after these improvements were made, until Holeman, the defendant, moved on the land about Christmas of 1849. Now, if these witnesses are to be be-

lieved, the defendant's statutory title was not complete. I am aware that there is great conflict of testimony on this point; for while one set of witnesses testified as I state, another set testifies equally positive that the actual possession commenced in 1848 and continued uninterruptedly to the bringing of the suit. We pass no opinion here as to the weight of the testimony, or which set of witnesses are to be believed and which of them not. The jury must pass on that question. I only refer to the evidence at all, for the purpose of showing the necessity of caution by the Court in instructing the jury on the point. The jury may have been satisfied that there was a break in the actual possession; but under the enumeration by the Court of the acts that would ripen into a statutory title, might have gone back to the first acts done and counted from that time, instead of from the time the possession commenced and continued unbroken.

The Court further charged, that if the jury believe, from the evidence, that the acts and use of the lot in question by the defendant were of such a character as to leave no doubt in the mind of Durham, if he had passed that way, that it was the purpose of Holeman to keep him out of his land, and that he was an adverse claimant, then such use and acts, in law, constitute adverse possession, and if continued seven years, will ripen into a perfect title.

5. This charge is open to the same objection; for no matter what the acts of defendant may have been, or what use he made of the lot, or what claim he asserted, if he was not in the *actual possession* of the lot, by himself or his tenants, *openly, notoriously, and visibly and continuously* for seven years previous to the commencement of the suit, under ·color of title and claim of right, then the statute will not protect him; that is the test, and the only one. Besides, this charge left it to the jury to determine what amounts to adverse possession. This is not their province. See *Paxon vs. Bailey,* 17 *Ga.,* 600.

We agree with the Court, that when there is an apparent conflict of the evidence, the jury must so reconcile the testimony as to make all speak the truth, and not impute perjury to any, if they can possibly do so; but when there is a conflict irreconcilably—as there most unquestionably is in this case—if the witnesses are all equally credible, then the jury

Durham *vs.* Holeman.

will credit those who had the best opportunity of knowing, or those who, from the manner of testifying, and the circumstances and facts upon which. their recollection, as to time, dates, etc., are based. Indeed, it is very difficult to lay down any certain rule by which the jury are to be governed. My own idea on this subject is, that as the jury are to find the truth from this conflicting evidence, and as they are, or are supposed to be, impartial between the parties, that they should find as they shall be conscientiously impressed by the evidence, let that be the one way or the other.

The Court charged, further, that " when there is an irreconcilable conflict in the evidence resulting in reasonable doubt upon their mind, then, in this, like a criminal case, the defendant is entitled to the reasonable doubt, and the law will leave the parties where it found them."

7. We hold the rule to be the reverse of that laid down by the Court. Here the plaintiff's title is indisputable. The defendant, to avoid the force of the title, and to defeat a recovery under this plain title, pleads the Statute of Limitation in bar of that right. The onus is on him to sustain his plea affirmatively. If there be a doubt—a reasonable one— the case is against him; and I am not so certain but that the same rule would apply in criminal cases. There is much authority for it, and none against it that I know of. But in a civil case, there is no question about the rule, and it stands to reason that it should be so. A party is not to be deprived of a plain right upon a mere doubtful claim of another.

In the *Lexington Insurance Company vs. Paver*, 16 *Ohio*, the Court recognizes the rule thus broadly: "It is the duty of the jury, in all cases, to find the truth of the fact presented to them. But if, after hearing all the evidence on the point, it still remains doubtful where the truth lies, what is to be done? We have always held, under such circumstances, it is the duty of the jury to resolve the doubt in favor of him against whom the charge is made. For instance, after hearing all the evidence, it remains doubtful whether the plaintiff has sustained his cause of action, that doubt must acquit the defendant. So, if the defendant relies on a special plea, if it is doubtful whether the plea is sustained, a jury cannot, with propriety, return a verdict sustaining the plea." So, in this case, if there be such a conflict in the evidence on the point whether the defendant has the statutory title, accord-

ing to the rules here laid down, that the jury cannot find the truth beyond a reasonable doubt, then they must find against the plea.

Judgment reversed.