RICHARD ROE, casual ejector, and JONES and BEARD, tenants, etc., plaintiffs in error, *vs.* JOHN DOE, *ex dem.*, SULLIVAN *et al.*, defendants in error.

1. If the defendant can show in ejectment an outstanding title paramount to that of the plaintiff, the latter cannot recover.
2. In ejectment, the plaintiff must connect himself with the title of his lessor, in order to recover; not so with the defendant.

Ejectment, from Lumpkin Superior Court. Tried before Judge RICE, at the July Term, 1861.

This was an action of ejectment, brought by John Doe, on the several demises of William H. Sullivan, Milton Fuller, Samuel Heaton, Caswell Farmer, and John Farmer, against Richard Roe, casual ejector, and Joseph Brown, Martin L. Jones, and William E. Beard, tenants in possession, to re-

cover lot of land No. 944 in the eleventh district of the first section, situate in said county of Lumpkin.

The plaintiff proved the *locus* and possession of the defendants at the time the suit was brought, and then read in evidence the grant from the State of Georgia to William H. Sullivan, dated 8th June, 1836; a deed from Sullivan to Milton Fuller, dated 17th August, 1851; a deed from Fuller to Samuel Heaton, dated 5th April, 1853; a deed from Heaton to Caswell Farmer, dated 4th November, 1853; and a deed from said Farmer to John Farmer, dated 12th September, 1855, and rested his case.

The defendants read in evidence a bond for titles, dated 25th March, 1836, by which Sullivan, the grantee, bound himself to execute to Francis W. King good and lawful titles to the land in dispute, whenever the grant should be presented. The purchase money was paid by King at the time the bond was executed.

Defendants then offered in evidence two deeds made by Francis W. King to William M. Jones for the land in controversy; one dated the 15th January, 1853, executed in the State of Alabama, attested by two witnesses, one of whom purported to be a Justice of the Peace, and which was registered without further evidence of its execution; the other, dated 22d January, 1861, executed in Georgia, attested by two witnesses, one of whom was a Justice of the Peace, and which was also registered. The second deed referred to the first, and the difficulty in the way of its admission as evidence, and also ratified and confirmed the first deed. The second deed was admitted in evidence, but the first deed was objected to on the ground that there was no sufficient proof of its execution. The presiding Judge sustained the objection, and repelled the deed, and the defendants excepted.

The defendants also introduced a deed from William M. Jones to Martin L. Jones for thirty acres of the land in dispute, and a deed from William M. Jones to William E. Beard for ten acres of the land, being the balance of the lot.

In behalf of the defendants, it was also proved, that some time before the year 1842, one Carder entered upon the land

and cleared a small portion of it—that in 1842 Carder, who did not claim the land, agreed with King to hold possession of the same for King, and as his tenant—that he did so hold possession until the year 1848 or 1849, when he sold his possession and improvements to William M. Jones, who immediately entered upon the land as King's agent and tenant, and held it until he purchased the same from King—that Jones continued to occupy and claim the land as his own until he sold it to Martin L. Jones and Beard, and that Martin L. Jones and Beard, by themselves and by their tenant Brown, occupied and claimed the land up to the time of the trial of the case.

After the argument of the case had closed, counsel for defendants verbally requested the presiding Judge to charge the jury, " that if they believed from the evidence that Francis W. King, by himself or his tenants, took possession of the land in 1842, with claim of title or right, and held the same adversely, openly, continuously and notoriously, for the term of seven years prior to the year 1852, then King had a perfect statutory title, and if it appeared by evidence that defendants derived their title and possession from King, then the plaintiff cannot recover.

" That the bond from Sullivan to King, with the purchase money paid, constitutes a color of title, which, if connected with a possession of seven years, makes a perfect legal title in King; and if a legal title be shown in King alone, then the plaintiff cannot recover, because he must recover upon the strength of his own title, and not upon the weakness of his adversary's."

This charge the Court declined to give; but on the subjects embraced in the requests, charged the jury as follows, to-wit: " If Francis W. King, by himself or by any person as his tenant, took possession of the land in dispute, claiming the same under the bond for titles from Sullivan to him, (the purchase-money being paid,) his possession was an adverse possession under color of title, and the statute of limitations began to run in his favor from the time he took such possession. If the defendants have shown that they, and those

under whom they claim, have had seven years' adverse, uninterrupted, and continuous possession of the land in dispute, under color of title, previous to the commencement of this action, then the plaintiff cannot recover. Defendants in ejectment have the right to tack on a previous adverse possession so as to make up the period of seven years before action brought, *provided* they connect themselves with the title of the previous possessor. If Francis W. King had possession of the land in dispute under the bond for titles from Sullivan, whether he (King) had that possession in his own proper person or by his tenant, then before the defendants can tack that possession to any other possession on which they may rely to make out the statutory period of seven years, they must connect themselves with the title of King, by showing that they claim under King. In other words, the defendants must connect themselves with King's title, as well as show that the whole possession on which they rely was continuous and uninterrupted for at least seven years. If the defendants have failed to connect themselves in some way with King's title, then they cannot rely in aid of their defence on any possession which King (by himself or tenant) may have had of the land in dispute."

The jury returned a verdict in favor of the plaintiff for the premises in dispute, and a reversal of the judgment is asked on the ground of alleged error, in the ruling of the presiding Judge, repelling the deed as before stated, and in the charge and refusal to charge hereinbefore set forth; and also on the ground that the verdict was contrary to law and evidence.

L. E. BLECKLEY, for plaintiff in error.

G. N. LESTER, for defendant in error.

*By the Court*—LUMPKIN, C. J., delivering the opinion.

There being no motion for a new trial we cannot consider whether the verdict be contrary to evidence or not. The Court sees no error in repelling the Alabama deed. Original proof of its sanction should have been resorted to, and not the deed of affirmance made in 1858.

In inspecting carefully the charge of the Circuit Judge, we fear it was calculated to mislead the jury, and perhaps the error resting in the mind of his Honor, Judge Rice, was this, that notwithstanding a perfect outstanding title was proven in King, he holds that is not sufficient to defeat the plaintiff, unless the defendants can connect themselves with King's title.

We will not stop to inquire whether this has not been done in this case. This Court has held in several cases, that this doctrine is true in relation to plaintiffs in ejectment, but it is otherwise as it respects defendants.

Persons having no interest in the lands were in the habit of hunting up old titles—it may be grants from the State— and by having a demise in the name of the grantee or feoffee oust defendants, whose titles were defective. To stop these speculative suits and quiet the possession of defendants, the Courts very properly held, that plaintiffs, under these circumstances, must show some privity between themselves and the persons in whose name they expected to recover. But for the very same reason, to-wit : the protection of defendants, it was laid down from the beginning, that inasmuch as the plaintiff must recover upon the strength of his own title and not upon the weakness of the defendant's, whenever the latter could show an outstanding title paramount to the plaintiff's, the plaintiff must fail, and this time-honored principle has never been departed from.

The Circuit Judge seemed to repudiate this doctrine, by requiring the defendants to connect themselves with King's title. He may have meant by successive tenances, but he employs the term *title* more than once in this connection.

The plaintiffs produced a complete chain of title. The defendants claim under Francis W. King, who bought the land in dispute of William H. Sullivan, in March, 1836, and took his bond for title. The purchase-money was paid by King to Sullivan, at the time the bond was executed. Carder took possession of the land in 1842, and agreed to hold as King's tenant. In 1848 or 1849, Carder sold his possession to William M. Jones, who immediately entered upon the

land as King's agent and tenant, and continued to occupy it in that capacity until he became the purchaser from King, and afterwards until he sold to the present defendants. We think the Judge should have given the charge requested and as requested.

The judgment below must be reversed and a new trial ordered.

Let the judgment be reversed.