## MITCHELL v. CRUMMEY.

1. In an action of ejectment, where the defendant relied on a prescriptive title acquired by seven years' adverse possession under color of title, it was competent, on the question of good faith, to admit in evidence fragments of wax and paper, in connection with the testimony of the prescribor that they came from the possession of his grantor, and that he believed them to be the original grant from the State, although they were so mutilated that their contents could not be ascertained or determined by the court.

2. It was not error to refuse a request to charge which contained an expression of an opinion on facts for consideration by the jury.

3. The other requests to charge, even if otherwise unobjectionable, were not applicable to the evidence.

4. Where title to land has been acquired by seven years' adverse possession under color of title, such title will not be lost by the holder thereof by abandonment of possession. If the judge erred in his charge on the subject of abandonment of title after a prescriptive title had matured, the error was not harmful to the plaintiff.

5. In connection with the testimony of the defendant on the question of good faith and possession, it was competent for him to testify that during his possession he had paid taxes on the property.

6. The evidence of the use of the land by "back boxing" for turpentine purposes, as more specifically set forth in the record, was sufficient to authorize the jury to find that such use amounted to adverse possession upon which prescription might be founded.

7. Assignments of error which are not referred to in the brief of counsel for plaintiff in error will be regarded as abandoned.

8. The evidence supported the verdict, and there was no error in overruling the motion for new trial.

APRIL 21, 1910.

Ejectment.    Before    Judge    Whipple.    Wilcox    superior    court. August 2, 1909.

*Eldridge Cutts,* for plaintiff.

*Hal Lawson,* for defendant.

ATKINSON, J.    The plaintiff claimed under a deed and a chain of title extending back to a sheriff's deed made in pursuance of a sale of the land in dispute as unreturned wild land for taxes due the State under an execution issued by W. L. Goldsmith, comptroller-general, October 1st, 1877.    The defendant did not contest the validity of the plaintiff's title, but undertook to show better title in himself by setting up prescription by adverse possession under color of title for a period of seven years.    The verdict was in favor of the defendant.    The plaintiff's motion for a new trial was overruled, and he excepted.

1. One assignment of error was that the court erred, "in allowing in evidence when offered by the defendant certain fragments of paper with a portion of what appeared to be a waxen seal, there being some forty or more fragments of said paper, all of which were offered by the defendant as being a grant from the State to the lot of land in dispute, but being in such mutilated condition that the contents of said paper could not be ascertained or determined." The ground of objection was, "that the same was irrelevant; and upon the further ground that the alleged grant was in such mutilated condition that its contents or genuineness could not be determined by the court, and such evidence was not admissible; and further upon the ground that it was not shown that said paper was a grant and that such grant had in fact been issued; and there was no compliance with the proper practice in proving a mutilated grant for the purpose stated by defendant's counsel." When this objection was made, the defendant's counsel stated that the mutilated grant was only offered as evidence bearing on the question of good faith in the purchase by J. S. Crummey and J. W. Hamilton. Other evidence was submitted, to the effect, that J. S. Crummey was the defendant; that while he and J. W. Hamilton were partners in the turpentine business they bought the land from James W. Bogan, and obtained a deed from him, dated July 25th, 1889; that at the time the deed was executed Bogan delivered the grant to Crummey and Hamilton, and Crummey believed it was the genuine plat and grant. Hamilton afterwards executed a deed conveying his one-half interest to Crummey. In view of all of the evidence we do not think there was any error in the ruling of which complaint was made. Good faith was a part of the defendant's case. It was competent for him to show that he bought in good faith. If the mutilated paper which was delivered to him by his vendor as the original grant added anything to his faith in the title which he was buying, it was competent, in connection with his testimony, to exhibit to the jury the original fragments which he obtained. If the evidence had been offered for the purpose of proving title, a different question would be presented. *Adair* v. *Wilder,* 91 *Ga.* 562 (18 S. E. 530).

2. Error was also assigned because the court refused to charge: "If under the rules of law I give you in charge you should find that the alleged turpentining by Crummey & Hamilton under the

first boxing was entirely stopped in the fall of 1896, and there was an interval of about two or three months before the commencement of the back boxing and turpentining thereunder, and during that interval there was no actual occupation of the land, or any other use thereof except the cutting of timber on said land for sawmill purposes, then I charge you that that interval in which the cutting of the timber was done would cause a break in the possession, as the cutting of the timber and its removal would not be sufficient to constitute possession. Such break or interruption of the possession would defeat the defendant's alleged prescriptive title; and if you should find there was such a break or interruption in the possession, you must find a verdict in favor of the plaintiff." There was no error in refusing this request. Considering the character of possession involved in the turpentine business, the fact that a brief interval took place, not over two or three months, between boxing the trees for turpentine purposes and back boxing them, during which a large amount of timber was cut from the land by one acting by permission or lease from the prescribor, would not authorize the court to declare, as a matter of law, that there was a break in the continuity of the possession, but the question was one of fact for consideration by the jury.

3. Error was assigned upon the refusal of requests to charge as follows: (a) "I charge you that the recognized test, as to whether there was an abandonment on the part of the defendant, is whether the plaintiff could lawfully have asserted and made use of his title by going into the actual possession of the land and doing so lawfully, instead of suing to recover the land; if he could, you must find for the plaintiff." (b) "If you find that Crummey and Hamilton parted with their title to the timber by a duly executed lease thereof and afterwards undertook to back box and again turpentine under a verbal agreement with the holders of the lease, and that there was no other possession of the land at the time of such second turpentining, then this would not amount to possession under written color of title, because of being under verbal agreement; if there was no complete prescriptive title established without such second turpentining, then you must find for the plaintiff." It appeared from the evidence, that, during the prescriptive period alleged, the firm of Crummey & Hamilton, of which the defendant was a member, executed a "timber lease" to

the Enterprise Lumber Company, whereby they "remised, leased, and sold . . all the growing merchantable pine timber, measuring thirteen inches in diameter and upwards," on a large number of lots of land, including the land in dispute, "to have and to hold to the said grantee the pine timber with all the rights and privileges thereto belonging, in fee simple, the vendors warranting the title to said timber." The lease also contained the provision: "The said party of the first part is now working the timber upon some of these lots for turpentine purposes, but they hereby covenant and agree to turn over to the party of the second part the pine timber upon as many as eight of said lots by November 1st, 1903; as many as six more of said lots to be turned over to said party by November 1st, 1904, and the remaining lots to be turned over by or before December 1st, 1906. Exclusive right of ingress and egress is hereby given to the party of the second part to the lots aforesaid for the purpose of cutting down and taking away the pine timber growing thereon. This right and privilege being hereby given to said second party, and may be assigned." An examination of this lease discloses the fact that only the pine trees which were thirteen inches in diameter and above passed thereunder, thus leaving all the others unaffected. In the winter of 1906 and 1907 the Enterprise Lumber Company, within two or three months, removed a large portion of the timber from the land in dispute, acquired under the lease. Under these circumstances, if the requests were correct statements of the law, they were not applicable.

4. The seventh, eighth, and ninth amended grounds of the motion for new trial complain of certain charges of the court relative to the loss of title by abandonment after prescription has matured. These charges were not misleading to the injury of the plaintiff, nor did they contain any expression of opinion of such character as to afford him a ground for new trial. If there was any misstatement of the law, it was not harmful to the plaintiff. After prescriptive title has matured, the prescribor does not lose his title by abandonment of possession. *Tarver* v. *Deppen,* 132 *Ga.* 798 (7), (65 S. E. 177).

5. Another ground relates to the admission of testimony. The defendant was permitted to testify: "I sold part of the land to some darkies. Me and them have paid taxes on the land all the

time." When this evidence was offered it was objected to as irrelevant. There is no merit in this ground of the motion for new trial. The defendant relied on a prescriptive title, and it was competent, in connection with his testimony as to possession and the good faith of his claim, to testify that he had paid taxes. The plaintiff in error relies upon the ruling announced in *Bullock* v. *Dunbar*, 114 *Ga.* 754 (4), (40 S. E. 783), but that case involves a different question.

6. Under the general grounds of the motion for new trial it was urged that the plaintiff had not shown the character of possession, or possession for the length of time, required to create title by prescription. There was evidence from which the jury could have found that the defendant and the firm of which he was a member, to whose title he had succeeded by purchase from his partner, had continuously worked the land for turpentine purposes for more than seven years. During the last two years of the prescriptive period it was worked under the plan known as "back boxing." This character of work was commenced in the spring, after the trees measuring thirteen inches and upward in diameter had been cut off for sawmill purposes during the winter of 1906 and 1907, and related to such trees as had been previously worked for turpentine purposes and not removed for sawmill logs, and also to trees which were too small in 1891 to be boxed, but had become large enough in the meantime. The character of work under the back-boxing process was much the same as working under the original boxing; the evidence described both. It was conceded, under the ruling in *Flannery* v. *Hightower*, 97 *Ga.* 592 (25 S. E. 371), that working the trees as originally boxed was sufficient to authorize the jury to find that such working constituted possession upon which prescription might be founded; but it was insisted that the rule announced in *Flannery* v. *Hightower* should not be extended so as to apply to the "back-boxing" plan, it being urged that under the latter plan the acts of the prescribor are not so visible and notorious as to attract the attention of one passing by, and that they are not sufficient evidence of adverse possession. The distinction which is sought to be drawn will not justify a refusal to apply the rule announced in the case of *Flannery* v. *Hightower*, supra.

7. The third and fourth amended grounds of the motion for

new trial are not mentioned in the brief of counsel for plaintiff in error, and under the rule of this court, as frequently stated, they will be regarded as abandoned.

8. The evidence supported the verdict, and there was no error in overruling the motion for new trial.

<div align="center">

*Judgment affirmed. All the Justices concur.*