GORDON, administrator, *v.* RANSOM & LOMAX LUMBER COMPANY *et al.*

1. Adverse possession of lands, under written evidence of title, for seven years will give a title by prescription.
(a) But the erection and occasional use of a pen for cattle or hogs, ten feet square, on a lot of wild land (containing 490 acres), and using the land at intervals as a range for cattle, and the cutting of small quantities of timber therefrom, by one who claims under color of title, is not such possession as affords a basis for title by prescription.
(b) Nor would the entry and adverse possession in 1909 of a vendee from the purchaser at sheriff's sale, and the cutting by him of most of the timber under color of title within seven years of the date of the bringing of the action, ripen into a prescriptive title in 1914, when the present suit was brought.
2. The verdict was without evidence to support it.
                    JUNE 13, 1917.

Ejectment. Before Judge Jones. Rabun superior court. June 10, 1916.

*Thad. L. Bynum,* for plaintiff. *Tillman & McCall, Hall & Grice, J. M. Bleckley,* and *W. S. Paris,* for defendants.

HILL, J. Hugh H. Gordon Jr., as administrator de bonis non cum testamento annexo, brought suit against L. S. Bleckley and others as tenants in possession of a certain lot of land consisting of 490 acres, and on the trial put in evidence a certiorari copy of the grant from the State of Georgia to his testator, covering the land in controversy, and letters testamentary, etc. Defendants averred that they and those under whom they claim have been "in quiet, peaceable, continuous, adverse, undisturbed, notorious possession of the land or premises sued for in said case, in good faith under color of title, for more than seven years prior to the bringing of plaintiff's said action." In support of their claim of title the defendants introduced in evidence a certified copy of a deed from the sheriff of Rabun county to Jasper S. Bleckley, dated May 9, 1884, purporting to convey the lot of land in controversy, in which it was recited that it was "wild and unimproved land subject to taxation, and not having been returned for taxes, nor the tax thereon paid for the year 1883." It further recited that the tax-collector issued execution against the lot of wild land in controversy, for the State and county taxes due thereon, and that by virtue thereof the sheriff levied on and seized the same, and after due advertisement did, on the first Tuesday in May, 1884, expose it at public outcry before the court-house door within the legal hours of sale, and it was knocked off to Jasper S. Bleckley the highest bidder, for $37. A bond for title was introduced, from Jasper S. Bleckley to J. C. Kimball, dated September 12, 1903, recorded September 16, 1903, describing the land in controversy; and a deed from J. C. Kimball and wife to Ransom-Lomax Lumber Company, dated April 28, 1909, and recorded May 12, 1909, describing the same land. The jury returned a verdict for the defendants. A motion for a new trial was overruled, and the plaintiff excepted.

1. We have examined the evidence in this case carefully, and have reached the conclusion that the verdict was without evidence to support it, and should have been set aside. Jasper S. Bleckley, the purchaser at the sheriff's sale, and under whom the defendants claim title, testified, in reference to the land: "I would say that it is a mile and a quarter to a mile and a half from my home. J.

C. Kimball has paid me for the land. I have been on this lot off and on. I did on that land what I do on my other land. I didn't have it all inclosed, but I inclosed some of it. I inclosed a place on it for the purpose of taking care of my stock; made of rails. I. made a convenient place to put them in. I don't recall what year. it was, but it was soon after I bought it. I would say somewhere. along about 1888. I bought it in 1884. I made the rails from timber right where I made the inclosure. I made a sort of pen. I had my stock there more or less every year. I have used that lot as a hog range; I did before I bought it and ever since. . . The fence was built for cattle, hogs, and horses. It was a stockpen, I guess about ten feet square, and was built of chestnut poles. That is the usual and ordinary way of making hog-pens. . . This hog or cattle pen was all the inclosure that I put on the land. . . The inclosure I put on there, and the road being built through there, my ownership with the deed I had, I called that possession," etc. Bleckley's sons testified to about the same effect. It will be observed that the lot of land in controversy contained 490 acres, and that the only inclosure on it was a hog-pen ten feet square, and that the lot was sometimes used on which to range cattle, as it had been before the purchase at sheriff's sale by the purchaser. In order for the verdict to stand, the defendants must either have shown a prevailing title, or that they had been in the actual adverse possession of the land under color of title for seven years. Civil Code, § 4169; *McCook* v. *Crawford,* 114 *Ga.* 337 (40 S. E. 225). The evidence in this case fails to show that the defendants had either. It is true that the plaintiff must recover on the strength of his own title; and his evidence does make out a prima facie case for him. And it can not be held that the erection of a hog or cattle pen ten feet square, by the defendants and those under whom they hold, on a wild lot of land consisting of 490 acres, a mile and a half from the home of the purchaser at sheriff's sale, and an occasional cutting of timber therefrom, or grazing cattle thereon, constitutes such possession as would form the basis of a title by prescription. *McCook* v. *Crawford,* supra. Nor would the possession of the defendant Ransom & Lomax Lumber Company, which entered into possession of the land under deed from Bleckley in 1909 and sawed most of the timber therefrom, ripen into a good title by prescription in 1914, when the present

suit was brought. See *Royal* v. *Lessee of Lisle*, 15 *Ga.* 545 (4) 549 (60 Am. D. 712).

2. The verdict was without evidence to support it. The other assignments of error in the amended motion for a new trial do not require a reversal, in view of the general charge of the court to the jury.                    *Judgment reversed. All the Justices concur.*