HOLTON *v.* MERCER *et al.*

48

No. 14344.   November 30, 1942.

*H. L. Causey* and *Highsmith & Highsmith,* for plaintiff in error.
*C. A. Williams* and *T. J. Townsend,* contra.

GRICE, Justice. ■ It is contended in the brief of the defendant (plaintiff in error), that, the plaintiffs having in their petition alleged that in 1937 the land sued for was sold for taxes and bought in by Bacon County, and having introduced in evidence a tax deed into the county to the land involved, but failed to show any title from the county to them, an insuperable barrier was thereby raised against a legal verdict in their favor; that the plaintiffs having alleged title into the county, and having introduced in evidence a deed conveying the land to the county, they are in the position of showing paramount outstanding title out of themselves. We recognize the law to be that if at the trial an outstanding title be shown superior to that of the plaintiff, he can not recover, although it not be shown that the defendant had title. *Brumbalo* v. *Baxter,* 33 *Ga.* 81; *Jones* v. *Sullivan,* 33 *Ga.* 486; *Blalock* v. *Redwine,* 191 *Ga.* 169 (12 S. E. 2d, 639). Also that facts alleged in a petition are constructive admissions in favor of the defendant, and need not be proved. The complainant can not deny them. *Peacock* v. *Terry,* 9 *Ga.* 137; *Armour* v. *Lunsford,* 192 *Ga.* 598 (15 S. E. 2d, 886). We do not think, however, that these principles control the issue here made, under the facts as they appear in this record. In the first place, petitioners set forth a title derived from Mrs. M. S. Holton, and the petition contains the statement that "the said defendant claims title . . under the same grantor as do petitioners, namely the said Mrs. M. S. Holton." This is a definite statement that the plaintiffs rely on the title which they derived from the sale under the security deed made to them by Mrs. Holton, through her attorney in fact. There is no statement that they rely on the tax title, though they mention it. Again, when defendant's counsel asked questions of a witness which could have no other relevancy than to show that the tax deed was void because of an excessive levy, he was interrupted by counsel for plaintiffs with the statement that "We do not intend to claim title under the tax deeds." The mere mention in the petition of a levy

and sale of this property for taxes against Mrs. Puckett, and that a deed thereto was made to the purchaser, Bacon County, will not be sufficient to show an outstanding title in the county, in view of the attack on the deed, as stated, the apparent acquiescence in the success of such attack, and the express statement of the counsel for plaintiffs that they did not rely on the tax deed. This was a virtual agreement with the adversary that no title had passed thereunder, and amounted to the hoisting of a white flag in surrender of any rights they might otherwise have asserted under the tax deed. Under the circumstances it could not be said that the plaintiff must lose his case because he showed an outstanding paramount title in a third person.

■ One ground of the motion for new trial complains that the court ruled that the defendant, J. C. Holton, was an incompetent witness in his own behalf to testify as to transactions between himself and his mother with respect to the land in question, and particularly that after being told by her that she would give him this land, he relying on this statement immediately entered possession and made certain valuable improvements thereon in reliance thereon. The plaintiffs claimed said land by virtue of a conveyance to them by his mother through her attorney in fact. It was a suit instituted by the transferee of a deceased person. The opposite party was therefore incompetent to testify as to transactions or communications with the deceased. Code, § 38-1603 (1); *Hendrick* v. *Daniel,* 119 *Ga.* 358 (46 S. E. 438); *Hendricks* v. *Allen,* 128 *Ga.* 181 (57 S. E. 224); *Hudson* v. *Broughton,* 147 *Ga.* 547 (94 S. E. 1007). That the plaintiffs' deed was executed by Mrs. Holton through an attorney in fact can make no difference.

■ Complaint is made that the court admitted in evidence, over objection, a tax deed from the deputy sheriff to Bacon County, dated December 7, 1937, conveying the land in controversy, the deed reciting that the land was levied on by virtue of five tax fi. fas. issued for state and county taxes due and owing by Lillian V. Puckett for the years 1932, 1933, 1934, 1935, and 1936, as the property of Lillian V. Puckett. The tax fi. fas. referred to were also admitted over objection. Of the fi. fas. referred to, the one for 1932, against R. R. Holton, was unsigned by print or otherwise, and upon this fi. fa. there was no entry of levy. The fi. fa. for 1933, $44.78, duly signed by the tax-collector, was against

M. S. Holton and Lillian V. Puckett, and on it was an entry of levy upon the land in question, but the entry of levy failed to recite as whose property said land was levied on, whether as property of M. S. Holton or Lillian V. Puckett. The fi. fa. for 1934 was unsigned in any manner, named no defendant, and stated no amount except $1 cost for the year 1934. The name Lillian V. Puckett appears at the top of fi. fa., and the tax items amounting to $34.96 are printed on the fi. fa. Upon this blank fi. fa. appears an entry of levy upon the property in question. The fi. fa. for 1935 was duly signed, was against Lillian V. Puckett for $43.94, besides interest and cost, upon which appears an entry of levy upon the property in question. Also an unsigned district and school-tax execution against Lillian V. Puckett, for an unnamed amount other than 50 cents cost for the year 1935, except at the bottom appears, "dist., sch'l tax $10.00." No entry of levy appears on this fi. fa. An unsigned state, county, and school-tax fi. fa. against Lillian V. Puckett for the year 1936, for $40.26, besides interest and cost. Upon this unsigned fi. fa. appears an entry of levy on the land in question. This ground of the motion contains the following recitals: "In this connection counsel for plaintiffs stated: 'We are not claiming anything under the 1932 fi. fa., because it did not levy on this 80 acres of land, but another part of the farm was sold in 1932, and it is not in issue.' In response to the question, 'Are you offering it [referring to the deed] now as the basis of a title?' counsel for plaintiffs replied, 'On those who signed fi. fas. only. We are offering the other unsigned fi. fas. to show the money that we put into it.' The court then and there overruled movant's objections to said tax deed and to said unsigned tax fi. fas., admitting them for the present, and later overruling movant's renewed motion to exclude said documents from evidence, ruling, with respect to the unsigned fi. fas., 'I will let them go in for the purpose of showing the amount of taxes which these parties, Mrs. Mercer and Mr. Cohen, paid out on this property, and not for the purpose of basis of title to the property.' Also, 'You might introduce it as a circumstance to show what they paid for the property, and that Mr. Holton did not return it for taxes and did not pay anything on it, and that they paid the taxes.' "

On an issue such as the one before the court in the instant case, the return of property for taxation, and the failure to return it by

one who claims it as a gift, are relevant circumstances to illustrate the bona fides of the claim of ownership. Compare *Mitchell* v. *Crummey*, 134 *Ga.* 383 (5), 385-7 (67 S. E. 1042); *Causey* v. *White*, 143 *Ga.* 7 (84 S. E. 58); *Crider* v. *Woodward*, 162 *Ga.* 743, 757 (135 S. E. 95). Certain of the objections to some of the documents referred to in that ground of the motion, however, may have been well taken. Even so, the overruling of said objections is not cause for reversal, since it appears elsewhere in the record that the defendant admitted that he had paid no taxes on the property. Counsel for the plaintiffs disclaimed any purpose of relying on the deed as title. The charge of the court on this subject was not subject to criticism. To admit the evidence was therefore harmless error.

■ Although the judge refused to permit the defendant as a witness to testify to transactions with his mother, he did testify as to independent facts; and it is earnestly contended by his counsel that his testimony, supplemented by that of other witnesses, made out his defense, and entitled him to a verdict. This contention assumes that the jury were compelled to accept his testimony. It overlooks the fact that as to a material issue the defendant Holton was contradicted. Mercer testified that when, two or three days before the sale under the power, he mentioned to Holton that he, Mercer, might bid on it, Holton replied: "We have done everything we can do, and we have lost it; and bid on it, and we want all the bidders we can get, and I would rather you would own it than anybody." On the other hand, Holton swore: "I did not tell him before the sale that I wanted him to bid on my tract of land. I never have talked about that tract of land, and it has never been mentioned between me and Emory Mercer during our natural life until the morning the land was sold."

When a verdict reaches this court, stamped with the approval of the judge, all conflicts in the testimony are resolved in favor of the finding of the jury. The uncontradicted testimony of a witness, if reasonable, is to be accepted, unless the witness be impeached in some of the ways pointed out. One of these is by disproving the facts testified to by him. It is an ancient principle of law that if a witness wilfully swears falsely in a material issue, his testimony should be rejected entirely, unless corroborated. *Sappington* v. *Bell*, 115 *Ga.* 856 (42 S. E. 233). This has become one of

the maxims: Falsus in uno, falsus in omnibus. The jury had a right to disregard the testimony of the witness Holton when he undertook to explain away the effect of the following: (a) His failure to return the property for taxation until after the death of his mother, which was long after he now claims the land belonged to him. (b) His witnessing his mother's signature to a security deed to the property, placed there by her years after a gift to him would have ripened into title. (c) His witnessing a turpentine lease to this property by Mrs. Puckett at a time when Mrs. Puckett held a deed from the mother thereto, which deed was junior to the one under which the sale took place. (d) His obtaining seed loans from the government, and in the application describing himself as a tenant. (e) His active participation in procuring a court order in correcting a date in the claim of title of Mrs. Puckett to the very land he now claims was at the time his own. Without his explanation, his conduct negatives his claim of ownership, and is incompatible therewith. Since the jury had the right to disbelieve him when he sought in each instance to explain his conduct, the facts above recited contradict the bona fides of his claim.

■ It is further contended that a verdict for the defendant was demanded under the following testimony: The witness Knowles swore that Mrs. M. S. Holton in the year 1913, after her son, the defendant, had moved on this land, told the witness that she was giving this land to the defendant, and on another occasion told the witness that she had given it to him, and had told him to build upon it. The witness Bland testified to a statement made to him by Mrs. M. S. Holton, that "the deed was Ket's," meaning J. C. Holton. The wife of J. C. Holton testified that Mrs. M. S. Holton told her husband that "she give him that side of the place [the portion here involved], and told him to build on it and he would have a place to raise his family." Other testimony was that in 1912 or 1913 the defendant moved on the land and had been in actual possession of it ever since; that he built a house on it, dug a well, cleared a portion of it, and fenced some of the land. Code section 48-106 is not applicable, because here the possession was of lands originally belonging not to the father, but to the mother. *Holton* v. *Mercer,* 65 *Ga. App.* 53, 59 (15 S. E. 2d, 253). Besides, his conduct, as referred to in division 4 of this opinion, might well

have been regarded by the jury as evidencing a disclaimer of title on his part. For similar reasons, it can not be said that the evidence demanded that he had acquired a prescriptive title, under the Code, § 85-406. The evidence was not such as to demand a finding that J. C. Holton, on the faith of a gratuitous promise made him by his mother, made such valuable improvements on the land on the faith thereof as to give him title thereto under the Code, § 37-804. Compare *Swan Oil Co.* v. *Linder,* 123 *Ga.* 550 (51 S. E. 622); *Vickers* v. *Robinson,* 157 *Ga.* 731 (122 S. E. 405); *Neely* v. *Sheppard,* 185 *Ga.* 771, 787 (196 S. E. 452).

The evidence supported the verdict.

*Judgment affirmed. All the Justices concur.*