20135. MILLS *v.* KELLEY.

ARGUED JULY 15, 1958—DECIDED SEPTEMBER 5, 1958— REHEARING DENIED OCTOBER 10, 1958.

*Cain & Smith, Custer & Kirbo,* for plaintiff in error.
*John E. Drake, Conger & Conger,* contra.

WYATT, Presiding Justice. Upon the trial of this case, it appeared that the petitioner was the owner of fifty acres of land in the southwest corner of a described land lot, and that the defendant was in possession of fifty acres in the northwest corner of the same land lot. It further appeared that, when these two tracts were surveyed out, a strip of land 38 yards wide by 397 yards long was left between them. This is the land now in dispute.

It further appeared that the plaintiff had secured deeds from certain named heirs of Michael Dollar, conveying to him an interest described as being 50.812% to a tract of land which includes the tract here in dispute, Michael Dollar being the alleged common grantor. It is upon these deeds that the plaintiff relied to recover. It appeared that the defendant's deed, which was

the last in a chain through various persons under which he claimed title, was invalid because it did not contain a sufficient description to be a valid conveyance of land. The defendant was, therefore, forced to rely solely upon his claim to the land by adverse possession for more than 20 years. Therefore, since it is not disputed that the deeds under which the plaintiff claims include the tract in dispute, the sole question in the trial of this case and before this court upon the ruling on the motion for a judgment notwithstanding the verdict is whether or not the defendant and his predecessors in title had been in continuous, open, notorious adverse possession of the tract in question for more than 20 years. All other questions gone into by the evidence and argued in the briefs of counsel in this court are immaterial to a determination of this case and will not be referred to herein, except to say that the defendant, having admitted in his pleadings that he is claiming along with plaintiff under a common grantor, will not now be heard to say that this is not the truth, and now to contend that the plaintiff can not prevail because he did not show any title into Michael Dollar, the alleged common grantor.

With this in mind, we proceed to examine the evidence to determine whether there is any evidence in the record sufficient to show such possession in the defendant and his predecessors in title as would entitle him to defeat the title shown by the plaintiff.

Ira Sadler testified for the defendant, that, some 37 years ago, a surveyor, referred to as Riggins, ran a line up the west side of the tract to a stump, and told Mills that this was his line running east from there; and that this line was some fifteen steps south of the fence put up by Kelley in 1953. This would be immaterial, since it was prior to the deeds from the heirs of Michael Dollar to the plaintiff, which deeds included land north of this Riggins line, except for the fact that there is some testimony with reference to acts by the defendant and his predecessors in title which are relied upon to show possession to this line.

The same witness, Ira Sadler, testified: "J. B. Davis and Company (a predecessor of Kelley) worked their land by turpentining it. They didn't work it any other way. Ain't never been no house or nothing built on it. They did cut timber on it. They

never did cut timber over this line—the one I'm talking about now, they cut down to the line."

Amos Sadler testified for the defendant with reference to the Riggin (or Riggins) line above referred to, as follows: "Mr. Riggin pointed out that stump as the dividing line pretty soon after Granberry Williams run it—been about 27 (sic) years ago. Since that time Mr. Mills and Mrs. (sic) Davis have turpentined the timber on that land. When Mr. Davis was turpentining it, he turpentined on down there about this line—I mean when I say 'about the line'—the line that Riggin surveyed. When Davis turpentined, he would turpentine down to the line that Riggin said was the line. Mr. Mills turpentined right down to the same line. There has been timber cut—Mr. Mills has had timber cut two or three times. When the (sic) cut timber, they all cut down there to about the same line. I think Dock Kelley had his cut last year. I imagine it was 35 or 37 years ago when the turpentining and timber cutting first started up to this line that Riggin set up—when they wanted the land surveyed out so they could turpentine it then. Ever since he marked the line, they have been using it."

There is some evidence that the defendant, Dock Kelley, has erected a fence some distance north of the so-called Riggins line and has cut timber to the fence, and has done some turpentining to the fence.

This is all the evidence as to the possession of the defendant and his predecessors. It will be noted that most of the evidence concerns itself with possession to a line which neither party now claims to be the line, but which does include the tract of land in dispute. From the evidence, it appears that the defendant, if he is to prevail, is dependent entirely upon the possession of J. B. Davis and Company, because it appears that Davis and Company was in possession of the land (if it was in possession) for a period of about 27 years. The evidence as to the activities of Davis and Company related to this entire period. Therefore, if any possession ripened into title by prescription, it was complete during the possession of J. B. Davis and Company. If it did not so ripen, it still has not, because from the time J. B. Davis and Company undertook to convey it to Boutwell in 1949

by invalid deed to the time of trial in 1958 was only a period of about ten years; and there was no possession of J. B. Davis and Company to be tacked on because either all of the possession of Davis and Company was such as to ripen into title by prescription, or none of it was and no title by prescription has yet ripened.

It is elementary that, in a suit to recover land, the plaintiff must recover upon the strength of his own title and not upon the weakness of the title of the defendant, and it is sufficient if the defendant shows an outstanding title in a third person which is paramount to that of the plaintiff. *Sutton* v. *McLeod*, 29 *Ga.* 589; *Blalock* v. *Redwine*, 191 *Ga.* 169 (12 S. E. 2d 639); *Vick* v. *Georgia Power Co.*, 178 *Ga.* 869 (174 S. E. 713).

With these principles in mind, we consider the character of the possession of J. B. Davis and Company as shown by the evidence. First, cutting of timber is not sufficient evidence of possession of realty to ripen into title by prescription. *Robertson* v. *Abernathy*, 192 *Ga.* 694 (16 S. E. 2d 584); *Durham* v. *Holeman*, 30 *Ga.* 619; *Gordon* v. *Ransom & Lomax Lumber Co.*, 147 *Ga.* 55 (92 S. E. 892).

This leaves only one question for decision upon the motion for a judgment notwithstanding the verdict. That question is whether or not a flat statement by witnesses that "J. B. Davis and Company worked their land by turpentining it" and that J. B. Davis and Company turpentined to a certain line, without any evidence as to the manner and character of the turpentining operation carried on, is sufficient to show open, notorious, and continuous possession. In so far as we have been able to find, this question has not been decided in Georgia. This court has held in a number of cases that "Whether or not the cultivation of a turpentine farm upon a tract of land is such an occupancy as may be the basis of a prescriptive title to the land itself, is a question of fact dependent upon the character of the possession, the extent of the visible signs of occupancy, and its continuance." *Flannery* v. *Hightower*, 97 *Ga.* 592 (25 S. E. 371). See also, *Walker* v. *Steffes*, 139 *Ga.* 520 (77 S. E. 580); *Mitchell* v. *Crummey*, 134 *Ga.* 383 (67 S. E. 1042); *Gee* v. *McDowell*, 209 *Ga.* 265 (71 S. E. 2d 532); and *May* v. *Sorrell*, 153 *Ga.* 47 (111 S. E.

810), where similar language appears. In each of these cases, however, there was evidence as to the character of the operation, the extent of visible signs of occupancy, and the continuance of the operation.

If the language in the above-cited cases is to be given any meaning, it must be construed to mean that turpentining is such occupancy as will be the basis of a prescriptive title when there is some evidence as to the character of the operation, the extent of visible signs of occupancy, and its continuance, and the evidence as to these elements of possession is such as to show an open and notorious occupation and a claim to the ownership of the property. In other words, there must be some evidence as to the nature of the turpentining operation whether or not the area was raked, whether or not fire breaks were maintained, the frequency with which the boxes were worked, the number of people who worked the area, whether or not the turpentining was continuous or sporadic, whether or not all or most of the trees suitable for turpentining were worked or only a few, or other factors from which the jury could determine whether the occupancy was open and notorious under a claim of right.

In the instant case, there is no evidence at all as to the nature of the turpentining operation carried on by J. B. Davis and Company or as to visible signs of occupancy. The plaintiff testified that he turpentined to a certain line and that he kept his raked. There is no evidence that J. B. Davis and Company did the same. There was no evidence as to the continuity of the operation. Amos Sadler testified for the defendant: "Ever since he [meaning Riggins] marked the line, they have been using it." Since this testimony is immediately preceded by testimony that J. B. Davis and Company turpentined and cut timber to the Riggins line, it could be construed that the testimony had reference to the turpentining. However, the testimony does not show—and there is no evidence that does—whether the so-called use of the line by turpentining was continuous for the entire period of occupancy by J. B. Davis and Company, or whether it was merely a sporadic use during the period. That is, whether all of the trees suitable for turpentining were turpentined regularly for the entire period, or whether a part of the trees were

turpentined regularly, or whether whatever turpentining was done was carried on regularly, or any indication as to the continuity of the turpentining.

It therefore appears that the plaintiff has shown by his deeds and testimony that he has a title to the property in question, and the defendant has failed to prove by any evidence any outstanding paramount title. It follows, the judgment denying the motion for judgment notwithstanding the verdict was error, and it is directed that, upon return of the remittitur, judgment be entered in accordance with the motion for a directed verdict.

*Judgment reversed with direction. All the Justices concur.*