19993. SMITH *v.* AGGREGATE SUPPLY COMPANY, INC.

ARGUED FEBRUARY 10, 1958—DECIDED MARCH 7, 1958.

*D. B. Howe, Harold L. Murphy,* for plaintiff in error.

*Robert A. Edwards, Murphy & Murphy, Thomas B. Murphy, James R. Murphy,* contra.

MOBLEY, Justice. ▇(a) In their brief counsel for the defendant state that the demurrers to the petition are based upon matters which are contended to be defects in the contract between the parties and not upon the allegations of the petition, and they further concede that whether the contract violates the rule against perpetuities depends on whether said contract is an option or a lease. They contend that the contract creates only an option to purchase minerals; that, under its terms, it may extend over an undetermined number of years; and that it therefore violates the rule against perpetuities and is invalid and void. An option to purchase realty or an interest therein which is unlimited as to the time within which the option may be exercised constitutes a perpetuity and is prohibited under the statute. Code (Ann.) § 85-707; *Brown* v. *Mathis,* 201 *Ga.* 740 (41 S. E. 2d 137); *Turner* v. *Peacock,* 153 *Ga.* 870 (113 S. E. 585). But a perpetual lease, or a perpetual right to renew a lease, is not violative of the rule against perpetuities. *Williams* v. *J. M. High Co.,* 200 *Ga.* 230, 236 (36 S. E. 2d 667, 162 A. L. R. 1139); *Atkinson* v. *Orr,* 83 *Ga.* 34 (9 S. E. 787); *Penick* v. *Atkinson,* 139 *Ga.* 649 (77 S. E. 1055, 46 L. R. A. (NS) 284, Ann. Cas. 1914B 842). Therefore, it becomes necessary to determine whether the con-

tract in this case is an option or a lease. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Code § 20-702. The pertinent portions of the contract in this case are as follows: "Whereas, the above party owns in fee simple the . . . property as hereinafter described, does wish to lease to one W. P. Rose the above property for removal of all minerals on said property, therefore it is mutually agreed as follows: . . . The party of the second part [Mrs. Smith] does, for the above mentioned cash consideration and of the covenants and agreements hereinafter contained on the part of the parties hereto, have granted, demised, lease, and do by these presents, grant, demise, lease and let unto the party of the first part, for the sole and only purpose of mining and operating for and marketing of such quantities of sand, gravel and any and all minerals as may be found in and on the tract of land situated in Haralson County, and in the State of Georgia, and more particularly described as follows: [Description.] This agreement shall remain in force as long as the party of the first part shall pay to the party of the second part the sum of $300.00 per year minimum. The above stated amount shall be paid in the event that the royalties hereinafter set forth do not amount to the above sum. The party of the first part shall pay to party of the second part the sum of .10 per cubic yard of all stone, sand and gravel removed from the property above described. . . This lease contract shall continue in full force and effect for an undetermined period of years and may be terminated by the party of the first part as his desire should it become unprofitable to operate said mining operation. The party of the second part may terminate this lease contract after the party of the first part has not paid the royalties or the guaranteed minimum and is in default at least ninety days, after the party of the first part has commenced operation of mining of said minerals."

In our opinion a mere reading of the above portions of the contract makes it clear that the parties intended to create a lease of the property described therein for the purpose of enabling the lessee to mine and remove the minerals thereon, for which

privilege the lessee obligated himself to pay an annual rental. The contract states that Mrs. Smith owns the property in fee simple and wishes to lease it to Rose, and that she does "grant, demise, lease and let unto" W. P. Rose the described tract of land for certain purposes. The reference in the contract to a certain price per cubic yard to be paid as royalties for materials removed from the land is merely a method agreed upon by the parties to ascertain the annual rental in the event a computation by this method would produce an amount larger than the $300 minimum rental; and in any event the lessee is bound to pay the minimum rental so long as the contract remains in force. As further illustrating that the intention of the parties was to convey an interest in the land, Mrs. Smith, the owner, specifically agreed that she would reimburse "the party of the first part [Rose] for any taxes, mortgages, or other liens that the party of the first part shall have to pay as a result of this contract." It is the general rule that, where a valid lease is entered into, conveying an interest in land, as between the parties the duty of paying taxes upon the land falls upon the lessee; and in order to relieve the lessee of this obligation it is necessary to do so by specific provision in the contract, as was done here. *Warehouses, Inc.* v. *Wetherbee*, 203 *Ga.* 483, 489 (46 S. E. 2d 894).

The instant case is distinguishable from *Brown* v. *Mathis*, 201 *Ga.* 740, supra, relied upon by the plaintiff in error. In that case a grantor in a deed reserved the right to take sand off the property, and provided further that, in the event the grantor did take sand, it was to pay to the grantee, his heirs and assigns, ten cents per car for the sand. It was held that by the latter proviso the parties intended the reserved right to be a privilege and not title to the sand; and since the privilege was not limited as to when it could be exercised it violated the rule against perpetuities. By the terms of the instant contract, the lessee's rights thereunder were complete upon its execution, and thereafter it was not necessary for him, or his assignee, to do anything further in order to be entitled to mine and remove minerals from the land, subject only to the requirement that the annual rent be paid. The rights to exercise the privileges of the lease were vested immediately upon its execution by the parties.

(b) Counsel for the defendant, in this court, has not argued

or insisted upon his ground of general demurrer that the contract is too vague and indefinite to be capable of construction and enforcement. But, since he has assigned error on the order of the trial court which overruled all the demurrers, suffice it to say that this ground of demurrer is without merit.

(c) The next contention is that the contract is unilateral and lacking in mutuality, and it is argued that, since the contract provides that it "may be terminated by party of the first part at his desire should it become unprofitable to operate said mining operation," the petitioner has no obligation under the contract. This argument completely overlooks the plain terms of the contract requiring that, so long as it remains in force, the petitioner, whether or not he exercises his rights thereunder, is absolutely bound to pay to the defendant a minimum rental of $300 per year, and upon a default of the required payment for at least ninety days the defendant may terminate the lease. The contract is mutually obligatory, binding upon both parties, and enforceable by either, and the contention that it is unilateral and lacking in mutuality is without merit.

■ The allegations of the petition are sufficient to allege a cause of action to enjoin the defendant from interfering with the petitioner's rights under the lease, and the trial court did not err in overruling the defendant's general demurrers.

*Judgment affirmed. All the Justices concur.*