21420.  AGGREGATE SUPPLY COMPANY v. SEWELL
*et al.*

408

*James R. Murphy, Thomas B. Murphy,* for plaintiff in error.
*Howe & Murphy,* contra.

ALMAND, Justice. The judgments under review are those denying a motion for a judgment notwithstanding the verdict and a motion for a new trial based on the general grounds and one special ground.

Aggregate Supply Company brought suit against Dora Belle Sewell, Douglas W. Chandler, and other named parties who were not served and who did not appear, seeking an injunction, damages, and other relief. The case proceeded to trial against Dora Belle Sewell and Douglas W. Chandler as joint defendants.

The material allegations of the plaintiff's petition are: that he is the owner of the mineral rights in and upon the tracts of land in dispute, by reason of a lease contract; that the plaintiff acquired title under the lease contract executed by the defendant, Mrs. Dora Belle Sewell, to W. P. Rose, the same being dated August 9, 1956, and recorded in deed book 85, pages 485-486, in the clerk's office of Haralson County; that said lease contract was transferred to the plaintiff by W. P. Rose on August 11, 1956; and that said assignment was recorded in deed book 85, page 512, in the clerk's office of said county; that, on October 15, 1957, the defendant, Mrs. Sewell, executed and delivered to the defendant, Douglas W. Chandler, a warranty deed conveying a portion of said tracts of land described in the lease contract; that the defendants were engaged in removing sand, gravel, stone, and related materials from the portion of the tracts of land which were conveyed to the defendant, Douglas W. Chandler, by the defendant, Mrs. Sewell; that, since the execution of the lease contract, defendants, Mrs. Sewell and Douglas Chandler, have each made claims to said minerals on said tracts of land, including the sand, gravel, stone, and related materials thereon; and that the defendant, Douglas Chandler, entered into a contract with the Highway Department of the State of Alabama, under which certain gravel on a portion of the tracts of land was conveyed to the highway department, which contract is dated November 12, 1957, and recorded in

deed book 90, page 95, in the office of the Clerk of the Superior Court of Haralson County; that, on November 21, 1957, the Highway Department of the State of Alabama entered on the tracts of land and commenced to remove the sand, gravel, stone, and related materials therefrom; that, on October 23, 1957, the plaintiff tendered to the defendant, Mrs. Sewell, the sum of $727.50, the same being the minimum rental for the rent year ending on August 9, 1957, and that the defendant refused to accept the same; that, on October 28, 1957, an attorney for Mrs. Sewell advised the plaintiff that she did not intend to respect the plaintiff's estate in the mineral rights on the disputed lands, and that Mrs. Sewell would not accept the minimum rental of $727.50; that, on October 28, 1957, the attorney also advised the plaintiff that he represented Douglas W. Chandler, the other defendant herein, and one D. W. Longino, that said parties had purchased the tracts of land from the defendant, Mrs. Sewell; that the parties also did not intend to respect the plaintiff's estate in the mineral rights on the land; and that they would seek an injunction against the plaintiff so as to enjoin the use of the same by the plaintiff; that the Highway Department of the State of Alabama has removed at least 6,000 cubic yards of the materials from the land; that the removal of the materials was under the direction of the defendants, Mrs. Sewell and Mr. Chandler, and in reliance upon the false representations of the defendants that they had the right to sell the minerals from the tracts of land; that the plaintiff is in the business of processing and selling sand, gravel, stone, and related materials and has erected a plant for such purpose in close proximity to said tracts of land, the cost of the plant being in excess of $70,000; and that the interference by the defendants with the plaintiff's rights in the estate under the lease contract will damage the plaintiff in such a manner as to be incapable of accurate computation; that the conduct of the defendants ordinarily and naturally produced the unlawful conduct of the Highway Department of the State of Alabama; and that the defendants, Mrs. Sewell and Mr. Chandler, are jointly and severally answerable in damages therefor, the same being in the amount of $2,609.36, for which amount the plaintiff sues;

that the damages to the plaintiff consists of 42¢ per cubic yard each cubic yard of the materials removed from the premises, the rate being based upon the capital expenditure made by the plaintiff for the construction and expansion of the processing plant.

The material prayers of the petition are as follows: That the petitioner recover damages from the defendants, Mrs. Dora Belle Sewell and Mr. Douglas W. Chandler, jointly and severally, in the sum of $2,609.36; that the defendants, Mrs. Sewell and Mr. Chandler, individually and jointly, be temporarily and permanently enjoined from interfering with the petitioner's rights under the lease contract during the term of the lease; and that the defendants, Mrs. Sewell and Mr. Chandler, individually and jointly, be temporarily and permanently enjoined from making any claim to the estate held by the petitioner in the minerals on and in said tracts of land under the lease contract, during the term of same.

The lease contract was attached to the plaintiff's petition. It provided, in substance, that Mrs. Sewell granted to W. P. Rose the right to remove sand, gravel, and any other minerals as might be found, from a tract of land located in Haralson County and owned by Mrs. Sewell. The lessee was to pay to Mrs. Sewell 10¢ per cubic yard of stone, sand, and gravel removed from the property but, in any event, the lessee was to pay Mrs. Sewell $727.50 per year minimum should the royalties not amount to the above sum. Mrs. Sewell had the right to terminate the contract if the lessee did not pay the royalties or the guaranteed minimum and was in default at least 90 days. The lease provided in addition to the above agreement that, should the lessee desire to mine or remove any minerals from the land under cultivation, including buildings, he was to pay the lessor the sum of $500 per year to be paid on the 1st day of each year beginning on January 1, 1957. The contract was entered into on August 9, 1956.

The evidence at the trial clearly established that the defendants had leased to W. P. Rose the right to mine such quantities of sand, gravel, and any and all minerals as may be found in and on the disputed tract of land. It was further

shown that the lease had been assigned to Aggregate Supply Company, the present plaintiff; that on January 9, 1957, the defendant, Mrs. Dora Belle Sewell, repudiated the lease contract, in that she advised Mr. W. P. Rose, the original lessee, by letter that she considered the contract null and void; that Rose advised Mrs. Sewell on January 14, 1957, that he was insisting upon his mineral rights under the contract; that, on or before October 28, 1957, a treasurer's check of the Trust Company of Georgia in the amount of $727.50 was tendered to Mrs. Sewell, and that the same was refused by her and returned to Robert A. Edwards, attorney for Aggregate Supply Company, with a letter stating that the reason for the return was that the defendant, Mrs. Sewell, considered the contract null and void; that the defendant, Mrs. Sewell, on October 15, 1957, conveyed to the defendant, Douglas W. Chandler, a portion of the tract of land described in the lease contract; that, on November 12, 1957, Chandler conveyed the property's mineral rights to the Highway Department of the State of Alabama; and that the defendants, acting by and through their attorney, had, on October 5, 1957, repudiated the lease contract and advised Mr. Rose that they considered the contract null and void.

At the close of the evidence, the plaintiff moved the court to direct a verdict in favor of the plaintiff on the issue of a permanent injunction as prayed for in the petition set out above.

The defendant took on two affirmative defenses: (1) Abandonment of the lease contract resulting from the lessee allegedly calling Mrs. Sewell, on January 2, 1957, and telling her that he did not want to use any of the land, and from his statements to others that he had turned the land back to Mrs. Sewell. (2) Forfeiture of the lease contract resulting from the lessee's failure to tender the minimum payment required by the contract.

1. We first consider the defense of abandonment. When this case was here before on demurrer (*Sewell v. Aggregate Supply Co.*, 214 Ga. 543, 106 SE2d 16), this court, speaking through Mr. Presiding Justice Wyatt, held the lease contract here involved to be a conveyance of an interest in land. By so holding, the right to remove the sand and gravel, granted by

the lease, amounted to a profit a prendre, and such holding became the law of the case. In *Bosworth v. Nelson*, 170 Ga. 279 (152 SE 575), this court held, when dealing with the reservation of a right to remove fish from waters of a tract of land conveyed, that such right was an interest or estate in the land itself and was in its nature corporeal. The same would be equally true in regard to the present grant of the right to remove sand and gravel. In *Tietjen v. Meldrim*, 169 Ga. 678 (9a) (151 SE 349), this court said, citing *Tarver v. Deppen*, 132 Ga. 798 (7) (65 SE 177, 24 LRA (NS) 1161), *Mitchell v. Crummey*, 134 Ga. 383 (4) (67 SE 1042), and *Callaway v. Beauchamp*, 140 Ga. 207 (4) (78 SE 846), "A perfect legal title to a corporeal hereditament can not be lost by abandonment." The court there made the distinction between a profit a prendre and an easement, saying that the latter may be lost by abandonment while the former may not. Therefore, in the case sub judice, the interest in the land itself could not be lost by abandonment as was contemplated here. There was, then, no question on this issue for the jury to determine since as a matter of law this was not an issuable defense.

2. We now move on to the question as to whether or not the lessee breached the lease contract by failing to tender the minimum payment due under the contract. The defendant lessor contends that, since the lessee paid by treasurer's check, such was not legal tender and, as a matter of law, there was no tender. While this contention is valid, and had there not been other circumstances to modify this well known proposition, then the defendant's view of the case would have to be sustained, however, there are two sets of circumstances in the case at bar that compel us to hold that there is no merit in this contention: (a) The evidence clearly shows that, before the payment was due, 90 days after August 9, 1957, the lessor wrote to the lessee declaring that she considered the contract null and void. Under such circumstances any tender of the amount due would have been a fruitless act, and equity does not require a party to make a useless step. *Miller v. Watson*, 139 Ga. 29, 32 (76 SE 585). (b) Nor is there any merit in the defendant's contention for the further reason that the evidence clearly shows that the

treasurer's check was tendered to the defendant within the time provided by the contract, and it was returned by the defendant to the plaintiff with a letter saying that the reason for its return was that she considered the contract null and void. "Where performance of either condition or promise requires the payment of money, and tender is made of a valid check or of some form of currency which is not legal tender for the purpose, and the tender is rejected without a statement that the ground of objection is the medium of payment, the tender is not thereafter open to that objection. . ." *McEachern v. Industrial Life &c. Ins. Co.*, 51 Ga. App. 422 (180 SE 625). Thus, the defendant here could not object at the time of the trial that the payment was not made in legal tender, as this right had been waived by failing to object to the medium of payment when returning the check to the plaintiff.

The evidence relative to the question of tender not being in conflict, there was no fact for the jury to determine on this issue.

Since there was no conflict in the evidence as to the right of the plaintiff to have the relief sought on the question of a permanent injunction, and since the plaintiff, at the close of the evidence, asked for a directed verdict in his favor on this question, and such verdict was demanded by the evidence, the court erred in denying the plaintiff's motion for a judgment notwithstanding the verdict returned by the jury in the defendants' favor. This ruling disposes of the case, and it is, therefore, not necessary to deal with the grounds contained in the plaintiff's motion for a new trial. When the remittitur from this court reaches the trial court, direction is given that the verdict for the defendant be vacated and that a final judgment be entered in favor of the plaintiff in accordance with the motion.

*Judgment reversed with direction. All the Justices concur.*