40016. HODGES v. GEORGIA KAOLIN COMPANY.

DECIDED MAY 30, 1963—REHEARING DENIED JUNE 27, 1963.

G. L. Dickens, Jr., for plaintiff in error.

Harris, Russell & Watkins, John B. Harris, Jr., James G. Maddox, contra.

EBERHARDT, Judge. ■ The battleground of the parties here presents the problem of whether the Company was under obligation to mine any kaolin from the leased premises prior to the bringing of this action in 1961. The plaintiff Hodges asks that we hold that there was an implied covenant in the lease obligating the Company to begin mining operations within a reasonable time after it was executed. On the other hand, the Company advances a number of reasons why no such covenant should be found, asserting that the contract language is clear and unambiguous.

The provisions in the lease that payment of rentals during the first five years would not cumulate as credits applicable to royalties for the mined clays and for a different rental thereafter indicates, we think, that at least for that period the parties contemplated that there might not be any mining operation during that period, and hence as to it there was no implied covenant. We find it unnecessary to decide whether, after the expiration of the first five years, when the rentals paid did accumulate as credits against royalties to be paid, there was any implied covenant to proceed, since we do hold that the events transpiring in 1954 and 1955 (notice by Kaolin to Hodges to remove his tim-

ber, removal of the overburden, amendment of the lease changing the method of determining royalty payments, and the sale to Kaolin of a site for the sinking of a deep well for mining operations on the property) gave rise to an obligation on the part of Kaolin to proceed with the mining within a reasonable time. The argument that Hodges still had the use of his land fails, for a substantial portion of it was rendered unsuited for any use save that of mining when the overburden was removed.

In this connection the language of the lease is pertinent. It provides that "for the purpose [of mining and removing kaolin or other clays] and for the purpose of carrying on similar mining operations on other neighboring lands Lessee shall have full and complete rights of ingress and egress to, from and over all parts of said land; the right to search for kaolin or other clays, the right to make excavations and pile waste earth from this or adjacent property on any part of said land . . ." It seems abundantly clear to us that the right to remove the timber and overburden, to make excavations and pile waste earth on the leased lands is dependent upon a purpose of the lessee to proceed with a mining operation, and that this should be done with reasonable diligence. What is "reasonable diligence" or a "reasonable time" under the circumstances here is a factual question for determination by the jury. *Grant v. Haymes*, 164 Ga. 371 (4) (138 SE 892). It may well be that when the lessee engages in an exploratory operation it will be discovered that there is no kaolin to be mined from the land, or that it can not be done in quantities sufficient to make it a profitable operation, in which event we think that the lessee's duty to mine will have been exhausted. The fact that those operations may render the land without value for farming would not give rise to any cause of action, for that is a risk that the lessor took when he entered into the lease agreement. But if the lessee causes the timber to be cut and the overburden to be removed and stops there without doing more, we think it has gone beyond the authority of the lease and has stopped short of its obligation thereunder. Further, it is alleged in the petition here that this was done *with no intention of doing any mining*. These allegations are sufficient as against a general demurrer.

■ The measure of damages alleged in the petition is not dealt with here since a general demurrer does not reach the question of the proper measure of damages. *Crawford v. Sumerau*, 100 Ga. App. 499 (111 SE2d 746); *Dixie Seed Co. v. Smith*, 103 Ga. App. 386, 390 (119 SE2d 299).

The general demurrer to the petition should have been overruled and the judgment is

*Reversed. Felton, C. J., and Russell, J., concur.*

ON MOTION FOR REHEARING.

It is urged that the cases of *Smith v. Aggregate Supply Co.*, 214 Ga. 20 (102 SE2d 539), *Sewell v. Aggregate Supply Co.*, 214 Ga. 543 (106 SE2d 16), and *Aggregate Supply Co. v. Sewell*, 217 Ga. 407 (122 SE2d 580) require a different result. We do not think so. In each of them the contract was to continue, upon payment of the rentals and royalties provided therein for an undetermined period of time, and the owner of the land contended that it was void because violating the rule against perpetuities. The Supreme Court held that the contracts were leases conveying an interest in the land, and thus not violative of the rule. In *Smith* the lease was dated August 6, 1956, and the lessee paid or tendered to the lessor the rental specified until acceptance was refused August 6, 1957—just one year after execution. In addition, the lessor had, in June, 1957, by contract, granted to another the right to remove sand and gravel from the land, and it was proceeding to do so. Aggregate Supply sought to enjoin the landowner and the third party from removing more sand and gravel and to recover damages for that already removed. The Supreme Court upheld the overruling of a general demurrer.

In *Sewell* a tender of the first minimum rental payment made within 90 days after expiration of the first year, as provided in the lease, was refused and Aggregate Supply sought to enjoin a termination of the lease and to recover damages because of the removal of sand and gravel by other parties under authority of the lessor. The Supreme Court held that the overruling of a general demurrer was proper, and later when it was tried before a jury that the evidence demanded a verdict for Aggregate and directed that a judgment n.o.v. be entered in its favor.

In neither of the cases was the question involved with which we here deal. In neither did it appear that Aggregate had given notice of intention to begin mining and had so damaged the land as to give rise to an obligation on its part to proceed. Rather, it appears that Aggregate was in the process of installing a plant and equipment for the purpose of mining the land and in these cases sought to protect its right to do so as against the lessor who wrongfully sought to terminate the lease and permit the removal of sand and gravel by others.

Here the lessee seeks no termination of the lease. He stands on it and its provisions. He has not permitted or brought about mining of the property by others. He simply insists that the lessee, having notice of its intention to begin the mining and having taken steps in preparing the land for mining, which the lease provides may be done *for that purpose,* and thus having rendered a substantial portion of his land unfit for other purposes, may not thereafter sit idly by and allow the land to remain undeveloped or unmined. We think his position is sound, and particularly since his principal compensation for the lease was contemplated to be the royalties to be received for the removal of the kaolin. Payne v. Neuval, 155 Cal. 46 (99 P 476); Taylor v. Kingman Feldspar Co., 41 Ariz. 376 (18 P2d 649); Annots. 60 ALR 901; 75 ALR2d 721. And see 2 Summers, Oil & Gas (Perm. Ed.) § 232, p. 127.

Nor have we overlooked the case of *Palmer Brick Co. v. Woodward,* 138 Ga. 289 (75 SE 480). In the majority opinion the Supreme Court there, we think, recognized that in a lease such as we here consider there is, *at least under some conditions,* an implied covenant requiring the lessee to proceed with diligence, saying: "When premises are leased for a certain purpose, and the amount of rent is contingent in part upon the diligence which the lessee exercises in the operation of the leased premises, the law *implies* such reasonable diligence. In 2 Snyder on Mines (1902), § 1284, it is said: 'The lease of a mine, in the absence of covenants requiring a certain amount of work, at least implies that the lessee will work the same with reasonable diligence. Thus, where a right to mine coal or other minerals is granted in consideration of the reservation of a certain portion of the product to the grantor, the law implies a covenant on the

part of the grantee to work the mine in a proper manner and with reasonable diligence, so that the lessor or grantor will derive the income which both parties had in contemplation when the contract was entered into.' In the case of Hiller v. Ray, 59 Fla. 285 (52 S 623, 20 Am. & Eng. Ann. Cas. 1162), it was held: 'Where the lessors of land for the specific purpose of taking therefrom phosphate rock of a specified character and volume do not covenant that the rock actually exists in the land, and the lessees do not covenant actually to find the rock in the land, but the contract contemplates the existence of the rock and a search for it by the lessees, there is an implied obligation on the lessees to make due and reasonable effort to find the rock in the land.' " Surely the circumstances occurring in 1954 and 1955, together with the provisions of the lease which we have alluded to, bring this situation within the ambit of what was contemplated in this declaration of the court in *Palmer*. And compare *Sinclair Refining Co. v. Davis*, 47 Ga. App. 601 (171 SE 150) and *Sinclair Refining Co. v. Giddens*, 54 Ga. App. 69 (1) (187 SE 201), where a rental based on gasoline sales but not less than $10 per month was held to imply a covenant that the service stations involved would be operated.

It is also urged that since, with the exception of $1.00, the only damages sought are special damages, none of which are recoverable, the sustaining of the general demurrer was proper, citing *Darlington Corp. v. Evans*, 88 Ga. App. 84 (76 SE2d 72). We think that *some* of the special damages are recoverable, and if any is recoverable the wrong measure will not subject the petition to a general demurrer. *Elwell v. Atlanta Gas-Light Co.*, 51 Ga. App. 919 (6) (181 SE 599); *Atlanta Plow Co. v. Bennett*, 49 Ga. App. 672 (6) (176 SE 822); *Koch Co. v. Adair*, 49 Ga. App. 824 (3) (176 SE 680).

*Motion denied.*