T. B. PEELER and Mrs. T. B. Peeler, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1963.

United States District Court M. D. Georgia, Macon Division.

Dec. 8, 1964.

Bloch, Hall, Groover & Hawkins, Macon, Ga., for plaintiffs.

O. J. Tyler, Dept. of Justice, Washington, D. C., and Floyd M. Buford, U. S. Atty., Macon, Ga., for defendant.

ELLIOTT, District Judge.

Mr. and Mrs. T. B. Peeler, the taxpayers, bring this action against the Government to recover income taxes alleged to have been erroneously and illegally assessed and collected by the United States for the years 1957, 1958 and 1959. The taxes complained of were assessed upon proceeds received by the taxpayer, T. B. Peeler,[1] pursuant to an agreement entered into between the taxpayer and Weston & Brooker Company whereby the latter was to extract and mine certain minerals from land owned by the taxpayer. Under the agreement the taxpayer was to receive compensation at the fixed rate of three (3) cents per ton on stone and two (2) cents per ton on sand excavated.

The agreement, which denominated the taxpayer as "Lessor", the mining company as "Lessee" and the taxpayer's proceeds as a "royalty", was originally entered into for a period of twenty years but, when it became apparent that the rock and sand could not be excavated within that period, the parties extended the term of the agreement to an indefinite period to enable the mining company to extract all of the rock and sand on the taxpayer's 219 acres. The same terms of the previous agreement attached to the amended agreement, i. e., taxpayer's proceeds were to be a fixed price per unit of stone and sand.

The taxpayer and the Government have filed their respective motions for summary judgment, there being no material issue of fact and the sole ques-

---

1. Mrs. T. B. Peeler is a party herein only because joint returns were filed for the periods at issue, thus all singular references to the taxpayer herein will refer to T. B. Peeler.

tion being one of law. Both sides have filed briefs of law in support of their motions and the Plaintiff has filed the affidavit of T. B. Peeler. The Government contends that the proceeds received by the taxpayer under the agreement above described constituted ordinary income under a lease; the taxpayer contends that the agreement constituted a sale of a capital asset to which the favorable capital gains tax treatment should apply. Thus, if the taxpayer's receipts under the agreement are to be treated as ordinary income, the Government's motion should be sustained. On the other hand, if the proceeds constitute capital gains, the taxpayer's motion should be sustained.

It is true that the agreement in the case at hand used the terminology of a "lease", but it is well established that we must look to the *substance* and not the form of the agreement to determine its essential character. Linehan v. C. I. R., 297 F.2d 276 (1 Cir.); Albritton v. C. I. R., 248 F.2d 49 (5 Cir.). We cannot completely ignore the descriptive words used in the agreement, but the controlling standard to be applied to proceeds from mineral excavation agreements is whether the landowner-taxpayer has retained an "economic interest" in the minerals in place. Laudenslager v. C. I. R., 305 F.2d 686 (3 Cir.); Crowell Land and Mineral Corp. v. C. I. R., 242 F.2d 864 (5 Cir.); Gowans v. C. I. R., 246 F.2d 448 (9 Cir.); Linehan v. C. I. R., supra. If the taxpayer has retained an economic interest in the minerals in place, the proceeds are taxable as ordinary income. If the taxpayer has retained no economic interest in the minerals, the arrangement is to be considered a sale of a capital asset and thus entitled to capital gains treatment.

It has been said that an economic interest is retained where the landowner has acquired an interest in the natural deposit in place and has secured, by any legal relationship, income derived from the extraction of the material deposit to which he must look for a return of his capital. Gowans v. C. I. R., supra.

Laudenslager v. C. I. R., supra. When this test is applied to the so-called "lease" at hand it becomes apparent that the taxpayer has retained no economic interest in the minerals and he is, therefore, entitled to capital gains treatment. The compensation to be received by Mr. Peeler was based on a certain price per unit, two and three cents per ton, and not based on a percentage of the sales price after the minerals were extracted. This was one of the determinative factors relied on by the Court of Appeals for the Fifth Circuit in the Crowell Land & Mineral Corp. case, supra. That case was decided in favor of the taxpayer. In the Albritton case, supra, where the landowner's proceeds were based on a certain percentage of the sales price of the minerals, the same court decided against the taxpayer and pointed to this as a distinguishing factor. In the case at hand, the taxpayer has sold the mineral deposit on his land, rock by rock, at a fixed price per ton. The taxpayer is not concerned with the price at which the mining company sells the rock or sand, or if it sells them at all. The nature of the agreement is not altered by the mere fact that payments are made monthly as the rocks are excavated, weighed and shipped.

Another factor which supports the conclusion that this was a sale of the mineral deposit is that the parties obviously intended to extract *all* of the deposit. This is evidenced by the fact that they amended the agreement to enable the mining company to excavate the entire deposit. And if there is any question that this was the intention of the parties to the agreement, it is the law of Georgia that when a miner has removed the trees and overburden from the land so as to make it unfit for other purposes, he has the *implied* duty to proceed to mine the entire deposit as per agreement. See Hodges v. Georgia Kaolin Co., 108 Ga.App. 115, 132 S.E.2d 86.

The mineral deposit which is the subject of this litigation extends to a depth of 600 feet and covers the entire 219 acres. The parties to the agreement con-

sider the quarry a "permanent operation" and when the deposit is exhausted the land will be totally useless to the taxpayer.

When all of the circumstances of this transaction are considered, it becomes apparent that the taxpayer has in fact, if not in form, *sold* the entire mineral deposit to the mining company and has retained no economic interest in the deposit. The proceeds from the transaction are entitled to capital gains treatment and the Plaintiff's motion for summary judgment should be and is sustained and the Defendant's motion for summary judgment is denied.

It is so ordered.