**UNITED STATES of America,**
**Appellant,**

v.

**T. B. PEELER and Mrs. T. B. Peeler,**
**Appellees.**

**No. 22584.**

United States Court of Appeals
Fifth Circuit.

May 11, 1967.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Crombie J. D. Garrett, Attys., Dept. of Justice, Washington, D. C., Floyd M. Buford, U. S. Atty., Macon, Ga., Richard M. Roberts, Acting Asst. Atty. Gen., Washington, D. C., for appellant.

J. Rene Hawkins, Bloch, Hall, Groover & Hawkins, Macon, Ga., for appellees.

Before RIVES, BELL and THORNBERRY, Circuit Judges.

PER CURIAM:

Taxpayer Peeler owns a 219-acre tract of land in Jones County, Georgia.[1] The Weston & Brooker Company wished to prospect on this tract of land to determine whether exploitation of any possible stone and sand deposits would be profitable. Accordingly, on May 5, 1955, a lease

---

1. Mrs. Peeler is a party to this litigation merely because joint tax returns were filed. She played no active part in any of the business transactions relevant to the resolution of this controversy.

agreement was entered into between taxpayer and Weston & Brooker whereby the latter was given the right to prospect on taxpayer's land for a period of six months. The agreement also provided that if after this period, Weston & Brooker wished to mine, the contract could be kept in force for twenty years by the payment of a yearly minimum royalty and a specified royalty per ton of mineral removed. On April 9, 1956, the parties entered into a supplemental agreement which incorporated the original lease agreement and extended it for an indefinite period of time so long as its terms and conditions were met. Pursuant to these agreements, Weston & Brooker entered into extensive mining operations on taxpayer's land.

The amounts paid to taxpayer under the terms of the combined agreement were reported by him as long term capital gains in his income tax returns for the years 1957, 1958, and 1959. In each year the Commissioner determined that the payments should not be accorded capital gains treatment, but should be taxed as ordinary income subject to a

five-percent depletion allowance. The additional taxes were in each year assessed and collected. Within the time allowed by law, taxpayer filed a claim for refund. When this claim was disallowed, the present litigation ensued.

Both parties filed motions for summary judgment with the district court, alleging that there was no material issue of fact and that they were entitled to judgment as a matter of law. The district court found that taxpayer in fact, if not in form, sold the entire mineral deposit to Weston & Brooker and had retained no economic interest in the mineral deposits. Accordingly, the court granted the taxpayer's motion for summary judgment and denied that of the government. Peeler v. United States, M.D.Ga. 1964, 238 F.Supp. 640.

We agree with the district court's determination that there was no material issue of fact and that summary adjudication was therefore proper. We hold, however, that the court erroneously applied the law in holding for the taxpayer.[2] Our rationale in reaching this

2. The district court in its opinion discussed two primary factors upon which its determination was grounded. The court, of course, was faced with the task of applying Crowell Land & Mining Corp. v. Commissioner of Internal Revenue, 5th Cir. 1957, 242 F.2d 864, and Albritton v. Commissioner of Internal Revenue, 5th Cir. 1957, 248 F.2d 49. In its view, the distinguishing factor between the two cases was the fact that in *Crowell* compensation to the landowner was measured by a fixed price per unit of mineral removed, while in *Albritton* compensation was based upon a percentage of the sales price of the extracted mineral. As discussed at length in the *Wood* case, *infra*, we do not view this as the distinguishing factor between the two cases. 377 F.2d at 311, note 26; neither do we consider a fixed-price-per-unit measure of payment incompatible with the retention of an economic interest. 377 F.2d 300.

The other primary factor upon which the district court's opinion was grounded was its belief that Georgia law created an implied obligation on the part of Weston & Brooker to extract *all* of the minerals once it had removed the

trees and overburden from taxpayer's land. The Georgia case relied upon, however, Hodges v. Georgia Kaolin Co., 1963, 108 Ga.App. 115, 132 S.E.2d 86, does not set forth that proposition. In our minds the *Hodges* case at most requires a miner who has cut timber and removed overburden to make a reasonable effort to render the mining operation profitable:

It may well be that when the lessee engages in an exploratory operation it will be discovered that there is no [mineral] * * * to be mined from the land, or that it can not be done in quantities sufficient to make it a profitable operation, in which event we think that the lessee's duty to mine will have been exhausted. The fact that those operations may render the land without value for farming would not give rise to any cause of action, for that is a risk that the lessor took when he entered into the lease agreement. But if the lessee causes the timber to be cut and the overburden to be removed and stops there without doing more, we think it has gone beyond the authority of the lease and has stopped short of its obligation thereunder.

Id. at 118, 132 S.E.2d at 88. It should also be noted that the agreement in the

determination is set forth in Wood v. United States, 5th Cir. 1967, 377 F.2d 300, decided this day, and will not be reiterated here. It is sufficient to say that after a careful review of the record and arguments presented in the present controversy, we are convinced that taxpayer retained an economic interest in the minerals in place and that the income derived from their extraction was properly taxed as ordinary income. We therefore reverse with instructions to the lower court to enter judgment accordingly.

---

instant case contained a provision allowing voluntary termination by either party. Such an explicit contractual provi-

sion clearly negates any covenant generally implied by the law which is to the contrary.