**Edith M. BELKNAP and Kentucky Trust Company, Executor of the Estate of William B. Belknap, Deceased, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 18201.**

United States Court of Appeals Sixth Circuit.

Jan. 28, 1969.

Jonathan S. Cohen, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant; Ernest W. Rivers, U. S. Atty., Louisville, Ky., of counsel.

William D. Grubbs, Louisville, Ky., (R. C. Hobson, Louisville, Ky., on the brief), for appellees; Woodward, Hobson & Fulton, Louisville, Ky., of counsel.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

This is an appeal from a judgment of the United States District Court for the Western District of Kentucky, 278 F. Supp. 337 determining that certain income arising out of a lease was taxable as gains from the sale of a capital asset rather than as ordinary income.

William B. Belknap[1] and his wife

---

1. Mr. Belknap died in 1965 and the Kentucky Trust Co. is the duly qualified and acting executor of his estate.

Edith M. Belknap (hereinafter referred to as taxpayers) owned a large farm in Kentucky which they acquired in 1916. There was a large deposit of Louisville limestone on the farm and in 1956 the taxpayers entered into an agreement with Derby Construction Company, Inc. (hereinafter called Derby) giving it the right to quarry and remove limestone from a portion of the land, comprising a minimum of 300 acres and a maximum of 400 acres. The document by which the agreement was evidenced is denominated a "lease" and it is in great detail as to the conditions and method of operation. We are primarily concerned with the provisions for the payment of the stone quarried and removed.

The lease was for a term of five years with privilege of renewals. For the first two years of the lease the lessors were to receive $416.66 per month with a payment of 6½¢ per ton for all the stone removed in any one year in excess of 100,000 tons. For the last three years of the lease the lessors were to receive a minimum of $7500 per year payable at the rate of $625 per month. The total royalty in any one year was to be computed at 5¢ a ton on the first 100,000 tons and at 6½¢ per ton on the next 150,000 tons. If 250,000 tons of stone were removed in any one year, the lessor was to receive 8¢ per ton on the total amount of tonnage removed. During any renewals of the lease the lessor was to be paid on a rate per ton basis. The lessee agreed to pay to the lessor a minimum royalty of $2000 per acre for each acre used, stripped or damaged. This minimum was to be credited with all regular royalty payments made on account of rock removed from the area.

In 1960, 1961, 1962 and 1963 taxpayers paid income taxes on the royalty payments received pursuant to the lease as ordinary income subject to depletion allowances. They subsequently filed refund claims for those years claiming that they had overpaid their taxes for the reason that the payments under the lease should have been treated as long-term capital gains. The claims were denied and suit was brought in the District Court to recover the alleged over payments. The case was tried before a district judge without a jury. The trial judge ruled from the bench that because the taxpayers were paid a fixed price per unit removed and did not share in Derby's profits, they did not retain an "economic interest" in the limestone and therefore were entitled to pay taxes on the basis of the sale of a capital asset rather than as ordinary income.

The decision turns on whether the taxpayers retained an "economic interest" in the limestone to be removed.

In Commissioner of Internal Revenue v. Southwest Expl. Co., 350 U.S. 308, 309, 314, 76 S.Ct. 395, 398, 100 L.Ed. 347 the Court held that a taxpayer had an economic interest where he has "(1) 'acquired, by investment, any interest in the * * * (minerals) in place,' and (2) secured by legal relationship 'income derived from the extraction of the * * * (minerals), to which he must look for a return of his capital.'" See also, Palmer v. Bender, 287 U.S. 551, 557, 53 S.Ct. 225, 77 L.Ed. 489; Royalton Stone Corporation v. C. I. R., 379 F. 2d 298 (C.A. 2), cert. den. 389 U.S. 978, 88 S.Ct. 471, 19 L.Ed.2d 473; Laudenslager v. C. I. R., 305 F.2d 686, 692 (C. A. 3), cert. den. 371 U.S. 947, 83 S.Ct. 501, 9 L.Ed.2d 497; Wood v. United States, 377 F.2d 300 (C.A. 5), cert. den. 389 U.S. 977, 88 S.Ct. 465, 19 L.Ed.2d 472; United States v. Peeler, 377 F.2d 531 (C.A. 5), cert. den. 389 U.S. 977, 88 S.Ct. 465, 19 L.Ed.2d 472; United States v. Green, 377 F.2d 550 (C.A. 5), cert. den. 389 U.S. 978, 88 S.Ct. 482, 19 L.Ed. 2d 473; Freund v. United States, 367 F. 2d 776 (C.A. 7); Rabiner v. Bacon, 373 F.2d 537 (C.A. 8); Hair v. C. I. R., 396 F.2d 6 (C.A. 9); Alkire v. Riddell, 397 F.2d 779 (C.A. 9); United States v. White, 401 F.2d 610 (C.A. 10).

We conclude that under the undisputed facts of this case and the law applicable thereto the taxpayers retained an "economic interest" in the limestone to

be removed and were subject to tax on the payments for the stone removed as ordinary income. Gitzinger v. United States, 404 F.2d 191, decided by this Court December 12, 1968, approved and followed.

The judgment is reversed and the case is remanded to the District Court with instructions to dismiss the complaint.