## 36828. ST. REGIS PAPER COMPANY v. BROWN et al.

CLARKE, Justice.

The Court of Appeals held that options to purchase contained within two timber leases were void ab initio as violations of the rule against perpetuities. *St. Regis Paper Co. v. Brown,* 155 Ga. App. 679 (272 SE2d 544) (1980). We granted certiorari. The timber leases are for terms of sixty years plus a few months and contain options which granted to the lessee the right to purchase the real estate for a fixed per acre price during the term of the lease, but could not be exercised during the first twelve years of the lease. The resulting effect was that the options held by St. Regis extended for more than sixty years from the date of the execution of the document in which they were contained. We conclude that these options do not violate the rule against perpetuities.

The rule against perpetuities in Georgia is statutory. Code Ann. § 85-707 (a) provides: "Limitations of estates may extend through any number of lives in being at the time when the limitations commence, and 21 years, and the usual period of gestation added thereafter. A limitation beyond that period the law terms a perpetuity and forbids its creation."

The rule did not originate in this state and has a long history. Following the enactment of the Statute of Uses in England in 1536, there were many instances in which executory interests became legal interests entitled to protection of the courts. When a series of decisions in the 17th century made these future interests indestructible, the rule against perpetuities evolved from a judicial attempt to curtail the resulting threat to alienability of property. A classic statement of the rule is as follows: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life

in being at the creation of the interest." Gray, *Rule Against Perpetuities*, § 201 (4th ed., 1942). We have held that where the future estate created is not tied to any life in being, the interest must become vested within twenty-one years. *Murphy v. Johnston*, 190 Ga. 23 (8 SE2d 23) (1940).

The rule has from its inception constituted a trap for the unwary and scholars are critical of extensions of the rule. See Leach, *Perpetuities: New Absurdity, Judicial and Statutory Correctives*, 73 Harv. L. Rev. 1318 (1960) (hereinafter "Leach"). Nevertheless, the purposes which it serves, even in a modern setting, are numerous. Among these are the utilization of wealth, the development of land by its current beneficial owners, and the assurance that society will be controlled by the living rather than from the grave. Chaffin, Real Property, 17 Mer. L. Rev. 208 (1965); 4 *Restatement of Property*, Introduction to Part I, pp. 2132-33 (1944).

The wisdom and legal logic, however, for extending the rule's applicability to a commercial setting is at best questionable. In today's world of complex and sophisticated real estate dealings, it is important that we do not broaden the rule against perpetuities to the point that its effect will be the opposite of its intended purpose. The rule came into being in order to control family property transfers which limited the rights of certain generations to alienate the property. Therefore, the thrust of the rule is to encourage the right of free dealings in real estate interest. To apply the rule to options contained in leases could very well have a reverse effect. Neither lives in being nor twenty-one years has any relevance to the commercial situation. This is particularly true when the holder of the beneficial interest in the property is able to utilize and develop his interest to its fullest, as is the case of a lessee who holds an option to purchase a leasehold. Leach, supra.

The majority rule in this country and the rule in England have followed a parallel course mandating that an option to purchase beyond the period of the rule of perpetuities is void if the holder of the option has no interest in the property. Simes & Smith, *The Law of Future Interests*, § 1244 (2d ed. 1956) (hereinafter "Simes & Smith"). The underlying rationale for this proposition is that the existence of such an option serves as a substantial deterrent to the free marketability of the real estate and to the possibility of its development. The majority of American jurisdictions part company with the English rule when the option is found in a lease. Under these circumstances, a distinction is made between an option in gross and an option appendant. When the option is a part of the lease and exercisable beyond the period of the rule against perpetuities, most American jurisdictions have found it to be valid. 4 *Restatement of*

*Property,* § 395 (1944); 6 *American Law of Property,* § 24.57 (A. J. Casner ed. 1952); Simes & Smith, § 1244. In both the case of an option in gross and an option within a lease, "... the equitable future interest of the option-holder, derived from the specific enforceability of the option, is not 'vested'; but the courts wisely ignore this purely conceptual fact, examine the *effect* of the transaction, and recognize that in the first case the option defeats the policy objectives of the Rule and in the second case it furthers them." Leach, supra at 1320.

Although the question of the applicability of the rule to options to purchase when they are part of a lease has been settled in England and most American jurisdictions, it has not been squarely addressed in Georgia. It is clear that in Georgia a perpetual lease or a perpetual right to renew a lease does not violate the rule against perpetuities. *Smith v. Aggregate Supply Co.,* 214 Ga. 20 (102 SE2d 539) (1958); *Williams v. J. M. High Co.,* 200 Ga. 230 (36 SE2d 667) (1946). Lessor/appellee insists the matter of the option within a lease is controlled by *Turner v. Peacock,* 153 Ga. 870 (113 SE 585) (1922) and *Brown v. Mathis,* 201 Ga. 740 (41 SE2d 137) (1947). These cases are, however, distinguishable in that they do not involve an option in a lease. In *Turner v. Peacock,* supra, the option was contained in a deed. Since the option to purchase additional realty was not limited in time, it was held that the option was void. *Brown v. Mathis,* supra, involved a reservation in a deed to mine and take sand perpetually at a set price. The court found that "... the reservation clause was an attempt to reserve to the grantor, its successors and assigns, a perpetual option to purchase the sand on the land described at the price of 10 cents per car, and constituted a direct violation of the rule against perpetuities ..." Id. at 746. As noted above, neither of the options was contained within a lease.

In establishing a rule for Georgia, we take into consideration the fact that a lease may create an interest in real estate. Such an interest was created here. It is logical that one interest which vests at an early time may be tied to certain conditions which cause it to ripen into a larger interest at a later time. Such a transition from one interest to another occurs when the holder of a security deed exercises the power of sale contained in the security deed after default by the grantor. No one questions that the power of sale in a security deed may be exercised beyond the period established in the rule against perpetuities. In the case before us now, we have a leasehold interest which may ripen into a fee simple interest upon the exercise of an option. Indeed, the holder of a leasehold interest is in a stronger position than the holder of a security deed because he is in possession. The combination of early vesting of an interest in the realty and the

right of possession is enough to place an option appendant to a lease beyond the prohibitions established in the rule against perpetuities.

Having considered the circumstances in this case in the light of commercial realities, as well as in the light of the basic policy behind the rule against perpetuities, we hold that an option to purchase written into a lease and exercisable within the period of the lease does not violate the rule against perpetuities even though the period within which it may be exercised extends beyond the period specified in the rule.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

DECIDED MARCH 12, 1981 —
REHEARING DENIED MARCH 24, 1981.

*Jesse G. Bowles, Jesse G. Bowles III, Howell Hollis, Albert W. Stubbs, William H. Agnor,* for appellant.

*Robert M. Margeson III, Donald D. Rentz, Edward Wohlwender, Jr., Alston, Miller & Gaines, G. Conley Ingram, Thomas Thorne-Thomsen,* for appellees.

*John B. Harris, Jr., Mary Mendel Katz, Charles L. Gowen, Pope B. McIntire, Griffin B. Bell, G. L. Dickens, Jr., Charles E. Moore, Philip B. Spivey,* amici curiae.

SMITH, Justice, dissenting.

I am somewhat astounded by the majority's suggestion that we are, for the first time, "establishing a rule for Georgia" with respect to whether an option to purchase real estate contained in a lease is violative of the rule against perpetuities. Although the majority of the cases before this court concerned with the validity of options to purchase realty have involved options which are not contained in a lease, the rule of law upon which these cases rest is as follows: "An option to purchase realty or an interest therein which [fails to meet the requirements of Code § 85-707] as to the time within which the option may be exercised constitutes a perpetuity and is prohibited under the statute." *Smith v. Aggregate Supply Co.,* 214 Ga. 20, 22 (102 SE2d 539) (1958); see Code § 58-707; *Brown v. Mathis,* 201 Ga. 740, 745 (41 SE2d 137) (1947); *Turner v. Peacock,* 153 Ga. 870 (113 SE 585) (1922). This statement of Georgia law makes no distinction whatever between options in gross and options appendant. In "establishing a rule for Georgia," the majority simply disregards

existing Georgia law.[1]

In *McKown v. Heery,* 200 Ga. 819, 820 (38 SE2d 425) (1946), this court was concerned with the validity of an option to purchase realty contained within a lease. The court stated: "In the absence of a specified date for exercising the right of purchase, the option will be construed as operative for the term of the lease or renewal thereof, and such option would not be void as containing no time limit within which the right to purchase might be exercised. A lease agreement for a specified term of two years, containing in addition provisions for the purchase of the property, which lease and option agreement were renewed, it is contended, by action of the parties thereto for a like term of two years, would not be violative of the rule against perpetuities." What possible concern could this court have had with the term of the lease in *McKown* if options to purchase were altogether exempt from the rule against perpetuities? The court obviously interpreted *Turner* as did the trial court in the case at bar, as did the Court of Appeals, and as do I.[2] In the instant case, we have the additional benefit of the *McKown* decision. The majority, however, simply disregards *McKown.*

We must bear in mind that the rule against perpetuities is not merely a rule of judicial origin, but a statutory command. "It is true that 'stare decisis' is a matter of judicial policy rather than judicial power. In this regard the common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions. However, even those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight

---

[1] See also *Thomas v. Murrow,* 245 Ga. 38 (262 SE2d 802) (1980); *Gearhart v. West Lumber Co.,* 212 Ga. 25 (90 SE2d 10) (1955); *Lufburrow v. Williams,* 152 Ga. App. 674 (263 SE2d 535) (1979); *Floyd v. Hoover,* 141 Ga. App. 588 (234 SE2d 89) (1977).

[2] Prior to *Turner,* the Maryland Court of Appeals had rendered opinions on the applicability of the rule to both options to renew and options to purchase contained in a lease. See Hollander v. Central Metal &c. Co., 109 Md. 131 (71 A 442) (1908); Banks v. Haskie, 45 Md. 207 (1876). In *Turner,* supra at 874, the court states: "Certain cases decided by the Court of Appeals of Maryland, dealing with certain principles affecting lease systems, do not necessarily conflict with what is ruled in the cases to which we here have referenced; *but if they do, they will have to yield to what seems to be the sounder view and the one supported in the cases first referred to.*" (Emphasis supplied.) The court then cites Starcher v. Duty, 61 W. Va. 373 (56 SE 524) (1907), which holds that options to purchase realty are subject to the rule against perpetuities. The language of *Turner* strongly suggests that the rule is applicable to options to purchase realty regardless of whether the option is in gross or appendant to a lease. The majority, however, chooses not to address the significance of this language.

where the precedent relates to interpretation of a statute. Once the court interprets the statute, 'the interpretation . . . has become an integral part of the statute.' Gulf C. & S. F. R. Co. v. Moser, 275 U. S. 133, 136 (48 SC 49, 72 LE 200); Winters v. New York, 333 U. S. 507, 514 (68 SC 665, 92 LE 840). This having been done, any subsequent 'reinterpretation' would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute." *Walker v. Walker,* 122 Ga. App. 545, 546 (178 SE2d 46) (1970). *Jones v. Swett,* 244 Ga. 715, 717 (261 SE2d 610) (1979); *Williams v. Ray,* 146 Ga. App. 333, 334 (246 SE2d 387) (1978).

The General Assembly has had many opportunities to limit the applicability of Code § 85-707. Indeed, on one occasion, it has done so. Ga. L. 1953, p. 42 was enacted "to amend Section 85-707 of the Code of Georgia of 1933 so as to exempt from the rule against perpetuities pension, profit-sharing, stock bonus, death benefit and disability benefit trusts created by an employer for the benefit of his employees or their beneficiaries, and to permit accumulation of trust income from the same . . ." See Code Ann. § 85-707 (b). The legislature has not seen fit to modify the rulings of this court as to the applicability of the rule against perpetuities to options to purchase. "We must assume that its failure to do so is a matter of considered choice." *Williams v. Ray,* supra at 334.

The policy arguments advanced by appellants and accepted by the majority are, in my view, meritorious.[3] However, this court has previously "ascertained" the intention of the legislature with regard to whether options to purchase (whether they be in a lease or elsewhere) fall within the rule against perpetuities. The legislature has not altered that position; therefore, neither should we.

---

[3] This is not to say, however, that the views expressed in *Turner* and subsequent Georgia cases are without support. See First Huntington Nat. Bank v. Gideon-Broh Realty Co., (79 SE2d 675) (1953) and cases cited therein; see also the English cases of Worthing Corp. v. Heather, 2 Ch. 532 (1906); Woodall v. Clifton, 2 Ch. 257 (1905). Although the rule announced in First Huntington is no longer the law of West Virgina, the case was "overruled," not by judicial fiat, but *through an act of the West Virginia legislature.* See W. Va. Code Ann. § 36-1-24. I submit that a legislative enactment similar to the one enacted by the West Virginia legislature is the only proper way to alter Georgia law on the matter currently before this court.