S90A0071, S90X0154. DAVIDSON MINERAL PROPERTIES, INC.
v. BAIRD et al.; and vice versa.
S90A0168, S90X0169. VULCAN MATERIALS COMPANY
v. BAIRD et al.; and vice versa.
(390 SE2d 33)

FLETCHER, Justice.

This appeal involves property appellees/cross-appellants have leased to appellants/cross-appellees in Cobb County. Appellants brought this action in the Fulton County Superior Court seeking specific performance and injunctive relief. Appellees counterclaimed seeking cancellation or rescission of certain lease agreements. The parties filed cross-motions for summary judgment. The trial court granted summary judgment to appellees on their claims that there was an implied duty to mine, that the erection of certain asphalt plants breached the lease agreements, and that appellees had not acted in bad faith. The court granted summary judgment to appellants on the issues of mutuality of consideration, fraud, vagueness, and the executors' authority to enter into the lease agreement. We affirm in part and reverse in part.

The parties to this dispute have had a contractual relationship with each other since at least 1968. In that year, the appellees, collectively referred to as the Chastain Family, leased a tract of land to Davidson Mineral Properties, Inc. In 1974, the parties decided to enter into a new agreement because four subsequent amendments to the 1968 lease were in need of clarification. In 1976, the various parties in this appeal executed three agreements. The first agreement was between the Chastain Family and Vulcan Material Company. The second, titled "Restatement of Leases," was between the Chastain Family and Davidson (the "Family Agreement"). The third agreement, also titled "Restatement of Leases," involved a smaller adjoining tract of land and was between Robert Harold Chastain and Davidson (the "Robert Harold Agreement"). The dispute centers around the second and third agreements.

The two agreements are materially similar in many respects. Under the terms of the agreements, the lessees would pay a royalty of $0.05 per ton of material quarried and sold, a minimum annual royalty, and all property taxes. The leases are each for nine consecutive five-year terms which were automatically renewed unless lessee elected not to renew. The two agreements provide that the lessee shall have the exclusive right to mine the property, to change or construct certain roads on the property, to install certain wiring, and to construct and operate on the property any "plants, buildings, fixtures and/or attachments necessary or convenient to the operations carried on by Lessee or its associated parties." Both agreements set forth that the lessors were aware of, and agreed to assist in, the lessee's intent to

relocate Greers Chapel Road. The agreements gave the lessee the exclusive right to terminate the lease after six months notice if it should determine that commercial operations were no longer desirable or practical. Finally, Davidson could assign the leases without the consent of the Chastains.

## Direct Appeals

1. Davidson and Vulcan argue that the trial court erred in finding that the lease agreements contained an implied duty to mine. They point out that when the two agreements were being negotiated, the Chastains sought to include a specific date for the commencement of mining operations, but still executed these agreements despite Davidson's successful efforts to keep such a date out. Pretermitting any parol evidence issues, we find this argument not dispositive because the mere refusal to include a specific date for the beginning of mining operations does not mean that there was no implied duty to begin mining at some reasonable time. We hold, however, that under the criteria set forth in *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148 (304 SE2d 365) (1983), the lease agreements contain no implied duty to mine.

*Higginbottom* makes clear that in determining whether a mining lease contains an implied duty to mine, each case is necessarily different, but that there are two central issues. The first issue concerns the nature of the rental or royalty payment, and the second involves the lessee's interference with the lessor's use and control of the leased property. Id. at 151. Taking the latter issue first, the trial court below found that Davidson's and Vulcan's lease of the properties had not interfered with the Chastains' use of the land within the meaning of *Hodges v. Ga. Kaolin Co.*, 108 Ga. App. 115, 118 (132 SE2d 86) (1963). We find no error as the agreements make clear that the Chastains could continue to graze their cattle, to live in a house on the property, and to use various sheds and warehouses until such time as mining operations rendered them unsafe and that, to date, neither Davidson nor Vulcan have caused any changes to the property in preparation for mining operations.

The dispute as to whether there is an implied duty to mine in this case centers around the nature of the payments to the Chastains under the Family Agreement and the Robert Harold Agreement. The Family Agreement provides for so-called Earned Royalties of $0.05 per ton of rock mined and sold, which will first be reduced by any remaining so-called Minimum Royalty Credits previously paid to the Chastains in years there was no mining or the Earned Royalties fell below the minimum royalty. The Chastains argue that because the Earned Royalties are offset by any remaining Minimum Royalty

Credits earned during the life of the lease, rather than just those earned during the year, the rental payments were contingent upon mining. Thus, goes the argument, there is an implied duty to mine within a reasonable time.

Although the amount of cash the Chastains would receive could vary from year to year, they do receive a minimum rent under the agreement. That is, they are guaranteed to receive a minimum rent over the life of the agreement in the form of either Earned Royalties or Minimum Royalty Credits. This minimum rent is not contingent on whether there is any mining. This holding is strengthened by the absence of a contractual provision requiring the forfeiture of any Minimum Royalty Credits paid or due to the Chastains, thereby evidencing that the parties intended for the Chastains to retain any remaining Minimum Royalty Credits.[1] Therefore, because the lessees have not interfered with the Chastains' use of the property, because the rent is not contingent on mining, and because there is no language within the lease to indicate otherwise, we hold that there is no implied duty to mine.

This result is not different for the Robert Harold Agreement. This agreement is different only in that it expressly states that the Minimum Royalty Credits are to be paid for only ten years, as opposed to being paid throughout the life of the lease. This fact is immaterial as Robert Harold Chastain is guaranteed a minimum rent of $50,000 over the life of the lease, which is not contingent on there being any mining.

2. The Chastains contend, and the trial court agreed, that Vulcan, as assignee, has breached the agreements by building and operating on the property an asphalt plant that processes stone from an adjoining property rather than stone from the leased property. This was error.

From the terms of the agreement, it appears that the intent of the parties was to give Davidson a wide degree of discretion in its use of the property, so long as the use was consistent with Davidson's operations. We find no breach of any covenant as the asphalt plants are connected with Davidson's and Vulcan's mining operations. The agreements contain no limitation that any plants would only process stone mined from the Chastains' property.

3. Davidson argues that the trial court erred in finding no evidence of bad faith or stubborn litigiousness so as to justify the award of attorney fees under OCGA § 13-6-11. We find no error. A review of the record shows that there is no evidence of ill-will or furtive design

---

[1] Furthermore, in their arguments, both Davidson and Vulcan state that the Minimum Royalty Credits are not subject to forfeiture.

and that the Chastains have presented substantial questions of law. See *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219, 224 (6) (312 SE2d 386) (1983).

## Cross-Appeals

4. The Chastains argue that the Agreements are void for lack of mutuality of obligation because Davidson can unilaterally cancel the agreements at its discretion, which right the agreements expressly deny to the Chastains. The termination clauses in the agreements are almost the same as those set forth and upheld in *Smith v. Aggregate Supply Co.*, 214 Ga. 20, 25 (102 SE2d 539) (1958) and *Sewell v. Aggregate Supply Co.*, 214 Ga. 543, 543-44 (106 SE2d 16) (1958). Therefore, there was no error.

5. The Chastains argue that the trial court erred in granting summary judgment to Davidson and Vulcan on the issue of fraud in the inducement. The Chastains contend that the president of Davidson and an agent of Vulcan knowingly made false representations upon which the Chastains reasonably relied to their detriment. See *U. S. Life Title Ins. Co. v. Hutsell*, 164 Ga. App. 443 (296 SE2d 760) (1982). The specific statements the Chastains rely on are: 1) Davidson's representation that mining would begin in two years from the signing of the agreements, 2) Davidson's statement that full scale mining operations would result in more than 2,000,000 tons of stone being mined, 3) Davidson's convincing the Chastains to enter into a land swap, and 4) Vulcan's representation at a public meeting with zoning officials that Vulcan's reserves were inadequate to meet future demand.

The trial court did not err in granting summary judgment to Davidson and Vulcan on the Chastains' claims of fraud. Although the Chastains may have relied on these statements, the statements are not fraudulent in that they are statements or promises as to future events, not facts as they then existed. *Beach v. Fleming*, 214 Ga. 303, 305-06 (104 SE2d 427) (1958). The Chastains presented no evidence the promises were made with the present intent not to perform, which would have supported a claim for inceptive fraud. *Smith v. Merck*, 206 Ga. 361, 370 (57 SE2d 326) (1950).

6. The Chastains argue that the executors of William Dean Chastain, Jr.'s estate did not have the authority to enter into a mineral lease agreement because the will contained only a power of sale and because the executors did not obtain a court's approval of the mineral lease as required under OCGA §§ 53-13-65 to -70. They contend that *Rockefeller v. First Nat. Bank of Brunswick*, 213 Ga. 493 (100 SE2d 279) (1957), on which Davidson and Vulcan rely, does not authorize this lease because the lease creates an option contract in contraven-

tion of the rule set forth in *Adler v. Adler*, 216 Ga. 553 (118 SE2d 456) (1961).

The Chastains' arguments are inapplicable to this case because not only did the two coexecutors of the will sign the lease agreement, everyone claiming under the will also signed the lease agreement and has accepted the benefits therefrom.[2] Therefore, the actions of the executors have been ratified. See *Davis v. Auerbach*, 78 Ga. App. 575 (51 SE2d 527) (1949). Contrary to the Chastains' arguments, OCGA § 53-13-66 does not require a different result under the facts and circumstances of this case.

7. The Chastains contend that the paragraph of the lease providing for the relocation of Greers Chapel Road is void for vagueness because the specific route the relocated road should take is not clear and because it is not clear what assistance the Chastains are required to provide in relocating the road.

The test in Georgia to determine whether a contract is unenforceable because of vagueness is as follows:

> [It is not] necessary that a contract shall state definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matter which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves.

*Milton Frank Allen Publications v. Ga. Assn. of Petroleum Retailers*, 219 Ga. 665, 672 (135 SE2d 330) (1964) (quoting *Dorsey v. Clements*, 202 Ga. 820, 824 (44 SE2d 783) (1947)). Using this test, it is clear the parties intended for the road to be moved to a certain corridor. Even if the exact location for moving the road and the assistance the Chastains are to provide in that regard were not specified, the intent of the parties is still clear. Therefore, the Chastains' argument that the paragraph is void for vagueness is without merit.

*The judgments in S90A0071 and S90A0168 are affirmed in part and reversed in part. The judgments in S90X0154 and S90X0169 are affirmed. All the Justices concur.*

DECIDED APRIL 5, 1990.

*Phears & Dailey, H. Wayne Phears, Victor L. Moldovan,* for Davidson Mineral Properties, Inc.

---

[2] Furthermore, the Chastains expressly warranted in the leases that they were the owners in fee simple of the leased premises.

*O'Callaghan, Saunders & Stumm, Andrew B. Williams II, Rex M. Lamb III, Max Kaley, Duard McDonald,* for Baird et al.

*Alston & Bird, G. Conley Ingram, Peter M. Degnan, Geoffrey H. Cederholm,* for Vulcan Materials Company.